Louis MOGAVERO,
Appellant/Cross-Appellee,

v.

John L. McLUCAS, Secretary of the Air
Force, and James R. Schlesinger, Secretary of Defense, Appellees/Cross-Appellants.

Nos. 75–2039, 75–2040.

United States Court of Appeals,
Fourth Circuit.

Argued May 3, 1976.

Decided Oct. 20, 1976.

Thomas P. Dugan, Fairfax, Va., and Edward F. Sherman, Bloomington, Ind. (Hall, Surovell, Jackson & Colten, Fairfax, Va., on brief), for appellant in 75–2039 and for appellee in 75–2040.

Steven Miller, Capt., USAF, Litigation Div., Washington, D.C. (Rex E. Lee, Asst. Atty. Gen., Washington, D.C., William B. Cummings, U. S. Atty., Alexandria, Va., and Robert E. Kopp, Atty., Civ. Div., Appellate Section, Dept. of Justice, Washington, D.C., on brief), for appellees in 75–2039 and for appellants in 75–2040.

Before WINTER, RUSSELL and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Louis Mogavero, a former major in the Air Force Reserve, sued to effect reinstatement, back pay and constructive credit toward retirement, on the ground that the Air Force failed to follow its own regulations in making a decision which led directly to his separation from the reserves in 1971. The Air Force conceded that it had not afforded Mogavero the procedure to which he was entitled, but at the same time disputed that Mogavero was entitled to all the procedural rights he claimed. It also asserted the equitable defense of laches, claiming that Mogavero had unreasonably delayed in filing his complaint, and that the delay was prejudicial since it had prolonged the period for which the Air Force might be liable for Mogavero's salary without receiving his services. The district court rejected the defense of laches and found that Air Force regulations entitled Mogavero to all the procedural rights he sought. The Air Force appeals these aspects of the district court's judgment, and we affirm.

The district court, however, denied the requested relief, and instead remanded the case to the Air Force for it to exercise its discretion anew after compliance with the required procedure. Mogavero appeals this aspect of the district court's judgment. While we are in basic agreement with the district court as to the appropriate remedy, we vacate this part of its judgment and remand the case with instructions that it retain jurisdiction of the case pending readjudication by the Air Force, so that it may grant the requested relief should the Air Force determine that Mogavero should not have been discharged.

I

Before proceeding to the facts of Mogavero's case, it is necessary to outline Air Force requirements with respect to reserve officers' rights and obligations to retirement and retirement benefits. Stated in laymen's language, an officer in the reserves may be in active, inactive or retired status. In order to be entitled to retirement benefits, an officer must complete twenty years' service in active status. In order to be in active status, an officer's

participation must remain at a certain level, as calculated by a point system. An officer who fails to earn the necessary number of points for a given period is placed in inactive status. Upon the officer's request, and upon evidence of satisfactory participation, the officer is reassigned to active status. However, an officer who has been twice transferred to inactive status for nonparticipation must obtain a "waiver" in order to be reassigned to active status. The granting of a waiver is discretionary with the commander of the Air Reserve Personnel Center. Normally, the commander appoints a board of officers to review requests for waivers and make recommendations to him, which are usually accepted. A request is to be considered only when the officer seeking a waiver has located a vacancy in a reserve unit, and the comments of the commander of that unit have been solicited. Thus, the officer's request can be considered in light of the Air Force's need for his particular skills in a specific position. Waivers are granted when in the "best interest of the Air Force"; however, an officer may request a waiver based on a claimed injustice to himself and is entitled to have the request forwarded to "USAFMPC" at Randolph Air Force Base for consideration. See AFM 35–3 § 10–9.

On March 3, 1968, prior to completing twenty years' active service, Mogavero was assigned to inactive status for the second time. The district court found that in the summer of 1970 Mogavero orally requested a waiver. This finding is not contested on appeal. On August 10, 1970, the request was denied. On May 20, 1971, Mogavero was discharged from the Air Force. He exhausted his administrative remedies by September 16, 1971, when the Air Force Board for the Correction of Military Records denied relief. From August, 1973, until shortly prior to August 12, 1974, when this suit was filed, Mogavero's attorneys were engaged in settlement negotiations with the Air Force.

## II

We conclude that, albeit for reasons different from those assigned by it, the dis-

trict court correctly rejected the Air Force's defense of laches.

■ As we said in *Giddens v. Isbrandtsen Co.*, 335 F.2d 125, 127 (4 Cir. 1966):

Laches is sustainable only on proof of both of two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961).

In overruling the defense, the district court specifically found the first element present, but held that the second element was missing because the accrual of unearned pay, the only prejudice claimed, was not the sort of prejudice which the defense attempts to prevent. Other courts have reached a contrary conclusion. *See, e. g., United States ex rel. Arant v. Lane*, 249 U.S. 367, 372, 39 S.Ct. 293, 63 L.Ed. 650 (1919); *Brundage v. United States*, 504 F.2d 1382 (Ct.Cl.1974), cert. denied, 421 U.S. 998, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975); *Brown v. United States*, 418 F.2d 442 (5 Cir. 1970).

■ We think that the district court's decision is sustainable on the ground that there was not a fatal lack of diligence on Mogavero's part. Thirty-five months elapsed between the time Mogavero exhausted administrative remedies and the date he filed suit. However, Mogavero's attorneys began settlement discussions with the Air Force approximately one year before suit was filed, and there is no suggestion that the case was not pursued with due diligence from that time forward. In the interest of encouraging disputants to settle claims prior to the institution of litigation, we conclude that such a period should not be counted for purposes of laches. Moreover, Mogavero's attorneys' assertion of his claim to a settlement put the Air Force on notice that he thought that his rights had been violated so that if it recognized the merits of his claim it could have been minimized any prejudice that it would sustain after the settlement demand was made. With the period of settlement negotiations excluded, the remaining nineteen-month de-

lay, while lengthy, is not fatal under the circumstances of this case. *Brundage* and *Brown* are distinguishable on this basis. In *Brundage,* the delay chargeable to the plaintiff was forty-three months; in *Brown,* the delay was thirty-two months.

### III

The Air Force concedes for purposes of this appeal that Mogavero was not afforded several procedural rights to which he was entitled under AFM 35–3. However, the district court ruled that waiver proceedings are also governed by AFR 11–1, a regulation of general applicability to investigations conducted by boards of officers. The Air Force contends that AFR 11–1 is inapplicable. Its position is that AFR 11–1 applies only to factual "investigations," whereas the function of a waiver board is merely to review a record and make a recommendation. The dispute is one of substance. If AFR 11–1 applies, an officer seeking a waiver has the right to expand the record at a hearing, the right to receive written findings, and the right to a recommendation consistent with those findings— in effect, to require an "investigation" instead of a mere "review." The brief of the Air Force states that, if the waiver proceeding is governed only by AFM 35–3, Mogavero's record would be given to the members of the review board to determine whether they feel a waiver is justified. They would vote by secret ballot and make no findings or conclusions and articulate no reason for their vote. The sole record would be the ultimate decision of the commander of ARPC.

■ We think that the plain language of AFR 11–1, which we have set out in the margin,[1] makes that regulation applicable to a waiver proceedings under AFM 35–3.[2] Specifically, the regulation states that it "applies to all Air Force activities." It notes that "[u]sually . . . boards of officers are appointed under specific Air Force Regulations," such as AFM 35–3, and unequivocally provides: "These instructions are supplemental to such regulations . . . . When the specific Regulation is silent on a matter covered herein, the provisions of this Regulation will apply." Further, a holding that AFR 11–1 is applicable to waiver proceedings is fully consistent with the advisory role of a waiver board, for "[t]he primary function of a board [of officers governed by AFR 11–1] is to ascertain and report facts so that the appointing authority may have adequate information on which to base his decision."

■ The Air Force tells us that waiver proceedings are not customarily conducted with the formality contemplated by AFR 11–1, and suggests it would be unduly burdensome to afford to waiver applicants the full panoply of rights granted by that regu-

---

1. ADMINISTRATIVE PRACTICES— Boards of Officers for Conducting Investigations

   1. *Purpose and Scope.* This Regulation prescribes the procedures generally applicable to the conduct of investigations by boards of officers. It applies to all Air Force activities.

   2. *Authority.* A commander possesses inherent authority to order a board of officers to investigate a matter within his command jurisdiction whether or not specific regulations exist covering the subject matter involved. Usually, however, boards of officers are appointed under specific Air Force Regulations. These instructions are supplemental to such regulations. In case of conflict, the specific Regulation under which the board is appointed will govern. When the specific Regulation is silent on a matter covered herein, the provisions of this Regulation will ap-

   ply. When no specific Regulation provides for the institution of an investigation, a responsible commander may initiate the investigation under the provisions of this Regulation.

   3. *Functions and Duties.* The primary function of a board is to ascertain and report facts so that the appointing authority may have adequate information on which to base his decision. The primary duty of a board is to develop and consider the evidence concerning the matter under investigation, to arrive at clear, consistent findings and, where required, to make recommendations.

   a. The functions and duties of investigating boards are purely administrative, not judicial . . . .

2. In view of this conclusion, we find it unnecessary to reach Mogavero's constitutional contention that the due process clause guarantees him the right to a hearing, findings, etc.

lation. The Air Force is, of course, free to amend AFR 11–1 or AFM 35–3, or both, to reflect its past practice and its notions of salutary administrative procedure. But the regulation as now written is plain and must be followed until amended or withdrawn. *United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974).

## IV

■ Mogavero argues that the district court's remedy—remand to the Air Force for a new waiver board proceeding—conducted in accordance with AFM 35–3 and AFR 11–1, is inadequate. He seeks immediate judicial relief of reinstatement, back pay and constructive credit toward retirement. But to grant such relief outright would be to presume that Mogavero would have been granted a waiver in 1970 had appropriate procedures been observed. As we have noted, the decision to grant a waiver is committed to the discretion of specified Air Force commanders. To accept Mogavero's argument, we would be required to conclude that it would have been an abuse of discretion not to grant Mogavero a waiver. This we cannot do on the record before us. *See* K. Davis, Administrative Law Treatise § 7.10 (1958). Thus, we think that the district court's remedy is the appropriate one.

■ The Air Force admits that those commanders having authority to grant waivers cannot award back pay or credit toward retirement. However, it suggests that if Mogavero's application receives a favorable disposition on remand, he can obtain full relief from the Air Force Board for the Correction of Military Records. We do not think that Mogavero should be put to that burden. He has already exhausted his administrative remedies once, including application to the corrections board. If he succeeds in obtaining a waiver, he should not be required to proceed further through administrative channels. He has properly invoked his right to judicial review, and we remand the case to the Air Force only because neither we nor the district court should substitute our judgment for the dis-

cretion of the Air Force. We therefore conclude that the district court should retain jurisdiction pending the outcome of a new waiver proceeding so that it can grant the relief sought forthwith should Mogavero obtain a waiver.

Retention of jurisdiction will also facilitate review of the Air Force's decision, should it be challenged, to insure that the proper inquiry has been made by the waiver board. In the proceedings before the waiver board, both Mogavero's qualifications and the availability of a vacancy for which he is suited must be considered as of the time a waiver was initially sought in 1970. Specifically, justice requires that Mogavero not be prejudiced in consideration of his waiver request because of his present age or because post–1970 manpower cutbacks have reduced the Air Force's need for persons of his age and qualifications. While we realize that such a retrospective evaluation may be difficult, we think it within the capability of the Air Force's administrative process.

AFFIRMED IN PART, VACATED IN PART, and REMANDED WITH INSTRUCTIONS ; MOGAVERO TO RECOVER COSTS.