**In the Matter of Mary Ellen EXTEN.**

**Mary Ellen EXTEN, Appellant,**

v.

**NATIONAL MORTGAGE
CORPORATION,
Appellee.**

**In the Matter of Gerald M. EXTEN.**

**Gerald M. EXTEN, Appellant,**

v.

**NATIONAL MORTGAGE
CORPORATION,
Appellee.**

**Bankruptcy Nos. 74–00358K, 74–00353K.
Civ. Nos. T–81–2515, T–81–2516.**

United States District Court,
D. Maryland.

July 28, 1982.

Marcia K. Docter, Charles A. Docter and
Docter, Docter & Salus, P.C., Kensington,
Md., for appellants.

Dale A. Cooter and Cooter, Gell & Cooter, Washington, D.C., for appellee.

THOMSEN, Senior District Judge.

These appeals by Mary Ellen Exten and Gerald M. Exten are from an order of Bankruptcy Judge Lebowitz, dated 15 July 1981, adjudicating both of them bankrupts. That order was filed in each of two unconsolidated proceedings instituted on 1 July 1974 as proceedings for an arrangement pursuant to Chapter XI of the Bankruptcy Act of 1898 (the Act), 11 U.S.C. §§ 701–99 (1976):[1] In re Gerald M. Exten, No. 74–00353–K, and In re Mary Ellen Exten, No. 74–00358–K. These appeals were assigned to me in March 1982. They have been fully briefed, and the court has heard oral argument.[2]

\*     \*     \*

The several Exten proceedings in the Bankruptcy Court began on 1 July 1974 when Exten Associates, Inc. (EAI), Gerald M. Exten and Mary Ellen Exten each filed a petition for an arrangement pursuant to Chapter XI of the Act. Gerald M. Exten was the president and sole shareholder of EAI. Mary Ellen Exten is the wife of Gerald M. Exten.

In March 1975, EAI filed in the Bankruptcy Court a modified plan of arrangement (modified plan), which provided that certain unsecured creditors, including National Mortgage Corporation (National), receive, *inter alia,* in settlement and satisfaction of the debts owed them by the debtors, a mortgage in the amount of $500,000 with 7% per annum interest. The modified plan provided that the mortgage, which all three debtors were to execute, cover the "real and personal property and business known as Murray's Topside Restaurant and Marina," which consisted of two contiguous properties having separate chains of title. Yearly interest payments of $35,000 were to be made to those unsecured creditors beginning 11 July 1976.

On 11 July 1975, Bankruptcy Judge Kaiser entered an order, which was filed in all three proceedings, confirming the modified plan.

None of the $35,000 interest payments has been made. In June 1976, without notice to its creditors or to the Bankruptcy Court, EAI conveyed the restaurant property to GAC Limited Partnership (GAC), a limited partnership consisting of Gary Goldstein (who along with the law firm of Schimmel & Tatelbaum P.A., of which he was a member, had been and were still attorneys of record for EAI), Charles Tatelbaum (who was a member of the firm of Schimmel & Tatelbaum), Alvin Pomerantz (who had loaned money to EAI during the Chapter XI proceedings) and Gerald M. Exten as limited partners. Gerald M. Exten was also named as the partnership's sole general partner.[3]

1. This case is governed by the 1898 Act as it stood prior to the adoption of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2683 (1978). Section 403(a) of the Reform Act provides that cases arising under the 1898 Act "shall be governed by the law applicable to such case, matter or proceeding as if the [Reform] Act had not been enacted."

2. Much of the background of these proceedings is discussed in this court's opinions in *Exten Associates, Inc. v. Sundowner Joint Venture et al.,* 24 B.R. 877 (1982), and *Klein v. Topside Corporation and GAC Limited Partnership,* 24 B.R. 883 (1982).

3. In April 1979, the Trustee of the Bankruptcy Estate of EAI sought to regain the restaurant property through an action filed in the Circuit Court of Baltimore City. That case is still pending.

On 4 February 1980, the restaurant was totally destroyed by fire. The property was insured against loss by fire in the amount of $575,000. GAC was loss payee under the policy. The Trustee sought and obtained in the Bankruptcy Court a preliminary injunction that, *inter alia,* barred GAC from paying out the insurance proceeds prior to a determination as to whom the proceeds properly belong. This court affirmed the order granting a preliminary injunction. *Klein v. Topside Corporation and GAC Limited Partnership,* 24 B.R. 883 (1982).

On 3 September 1980, the Trustee filed in the Bankruptcy Court a complaint, which invoked the court's summary jurisdiction, seeking an order directing certain defendants, including GAC, to turn over the restaurant property to the Trustee and nullifying any assignment of the fire insurance proceeds to the Maryland National Bank. The defendants therein filed

In April 1977, EAI executed what purported to be the mortgage called for by the modified plan, but which in fact covered only the marina and not the marina and restaurant, as called for by the modified plan.

On 28 August 1978, National, together with another unsecured creditor, Sundowner Joint Venture (Sundowner); filed with Judge Kaiser a Motion under Bankruptcy Rule 11–42(b)(5) [4] for Revocation and Confirmation of Modified Plan of Arrangement and Conversion to Bankruptcy.[5] The bases of that motion were that all three debtors had defaulted in the terms of the modified plan by failing to make any of the required $35,000 interest payments and by failing to have all three debtors rather than only EAI execute the April 1977 mortgage. National alleges, and it is clear from the record, that at the time National and Sundowner filed that motion they did not know that EAI had conveyed the restaurant to GAC and that the April 1977 mortgage covered only the marina and not the restaurant and marina, as called for by the modified plan.

Judge Kaiser held two hearings on the joint motion of National and Sundowner. At the second hearing, held 7 November 1978, National and Sundowner informed the court that they were "putting before the Court in support of the view that there has been a default" the undisputed fact that none of the required interest payments had been made. On 29 December 1978, Judge Kaiser issued an order adjudicating EAI a bankrupt.[6] That order made no reference to either Gerald M. Exten or Mary Ellen Exten and was docketed only in the proceeding entitled *In re Exten Associates, Inc.*, No. 74–00351–K.

On 30 April 1979, Judge Kaiser retired.[7] On 1 June 1979, Judge Lebowitz was appointed Bankruptcy Judge for the District of Maryland.

On 23 June 1980, National filed under § 377 of the Act[8] and Bankruptcy Rule 11–42(b)(5), see note 4 above, an "Application For Order Directing That Bankruptcy Be Proceeded With" against Gerald M. Exten and Mary Ellen Exten. The bases for

---

motions to dismiss that complaint; the motions were denied by Judge Lebowitz on 28 August 1982 in an opinion and order. *Matter of Exten Associates, Inc.*, 13 B.R. 818 (Bkrtcy.Md.1981).

4. Rule 11–42(b)(5)(A) provides:
"The court shall enter an order, after hearing on such notice as it may direct dismissing the case, or adjudicating the debtor a bankrupt if he has not been previously adjudged, or directing that the bankruptcy case proceed, whichever may be in the best interest of the estate:

\*　\*　\*　\*　\*　\*

(5) where the court has retained jurisdiction after confirmation of a plan:
(A) if the debtor defaults in any of the terms of the plan; or
\* \* \*"

National and Sundowner also moved under Bankruptcy Rule 11–41 to revoke confirmation of the modified plan on the grounds that the debtors had procured confirmation through fraud. As noted in the text above, the alleged fraud was not that the April 1977 mortgage covered only the marina. At a hearing held on 4 October 1978, counsel for National, in effect, withdrew his motion that he brought under Bankruptcy Rule 11–41.

5. The 28 August 1978 motion was not docketed in the proceedings entitled In re Gerald M. Exten, No. 74–00353–K, or In re Mary Ellen Exten, No. 74–00358–K. It was docketed only

in the proceeding entitled In re Exten Associates, Inc., No. 74–00351K. However, the caption of that motion referred to all three Exten proceedings.

6. This court affirmed that order in *Exten Associates, Inc. v. National Mortgage Corp. and Sundowner Joint Venture*, 24 B.R. 877 (1982).

7. Judge Kaiser did return to the bench briefly in October 1979, but apparently took no action in these proceedings.

8. Section 377 provides in pertinent part:
"Where the court has retained jurisdiction after the confirmation of an arrangement and the debtor defaults in any of the terms thereof ... the court upon hearing after notice to the debtor, the creditors, and such other persons as the court may direct shall—

\*　\*　\*　\*　\*　\*

(2) where the petition has been filed under section 722 of this title, enter an order either adjudging the debtor a bankrupt and directing that the bankruptcy be proceeded with pursuant to the provisions of this title or dismissing the proceeding under this chapter, whichever in the opinion of the court may be in the interest of the creditors.

that application were that the Extens had failed to make any of the annual $35,000 interest payments and that the April 1977 mortgage "contained terms which did not comply with the terms of the confirmed plan of arrangement, both as to payment and, most important, as to the failure to include the restaurant property which had been conveyed." After a hearing, at which both Gerald M. Exten and Mary Ellen Exten testified, Judge Lebowitz entered an order, dated 15 July 1981, adjudicating Gerald M. Exten and Mary Ellen Exten bankrupts. That order is the subject of the present appeals.

\* \* \*

█ The Extens argue first that the Bankruptcy Court did not retain jurisdiction to adjudicate them bankrupts after confirmation of the modified plan, and therefore that the 15 July 1981 order must be reversed. For the reasons stated at pages 6–7 of this court's opinion in *Exten Associates, Inc. v. Sundowner Joint Venture and National Mortgage Corp.,* 24 B.R. 877 (1982), this court concludes that the bankruptcy court retained jurisdiction after confirmation of the modified plan to adjudicate Gerald M. Exten and Mary Ellen Exten bankrupts.

The Extens argue next that National was barred by the doctrine of res judicata from seeking to have the individual Extens adjudicated bankrupts. The Extens contend 1) that National sought in its 28 August 1978 motion and at the two subsequent hearings on that motion to have all three debtors adjudicated bankrupts and 2) that Judge Kaiser, in his order of 29 December 1978 adjudicating EAI a bankrupt, impliedly denied National's motion to adjudicate Gerald M. Exten and Mary Ellen Exten bankrupts. Therefore, the Extens argue, the 29 December 1978 order barred National from relitigating in its 23 June 1980 application the issue whether Gerald M. Exten and Mary Ellen Exten should be adjudicated bankrupts.

█ In *Lawlor v. National Screen Services Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1954), the Supreme Court stated:

[U]nder the doctrine of res judicata, a judgment "on the merits" in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action.

The rules of res judicata apply to decisions of bankruptcy courts. *Katchen v. Landy,* 382 U.S. 323, 334, 86 S.Ct. 467, 475, 15 L.Ed.2d 391 (1966); see generally, 1B Moore's Federal Practice ¶ 0.419, at p. 2901 (2d ed.1980).

█ It is not disputed that National sought in its 28 August 1978 motion to have Gerald M. Exten and Mary Ellen Exten, along with EAI, adjudicated bankrupts. However, the 29 December 1978 order adjudicating EAI a bankrupt refers only to EAI and was docketed only in *In re Exten Associates, Inc.,* No. 74–00351–K. No order one way or the other was entered either *In re Gerald M. Exten,* No. 74–00353–K, or *In re Mary Ellen Exten,* No. 74–00358–K; nor was any ruling made with respect to either individual. The three Exten proceedings in the bankruptcy court were never consolidated. The doctrine of res judicata applies only to the parties to the action, and their privies, in which the judgment was entered. See 1B Moore's Federal Practice ¶ 0.411[1], at 1251 (2d ed.1980); *Thomas v. Consolidation Coal Co.,* 380 F.2d 69, 85 (4 Cir.1967), cert. den., 389 U.S. 1004, 88 S.Ct. 562, 19 L.Ed.2d 599, reh. den., 389 U.S. 1059, 88 S.Ct. 768, 19 L.Ed.2d 862 (1967).

The Extens argue also that National is barred by laches from seeking, in its 23 June 1980 application, to have each of them adjudicated a bankrupt. In *Mogavero v. McLucas,* 543 F.2d 1081, 1083 (4 Cir.1976), the court quoted *Giddens v. Isbrandtsen Co.,* 355 F.2d 125, 127 (4 Cir.1966):

Laches is sustainable only on proof of both of two elements: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961).

This court concludes that there was no lack of diligence on the part of National. The first default under the modified plan occurred on 11 July 1976 when the debtors failed to make the first $35,000 interest payment. It is true that approximately two years elapsed before National moved to have all three debtors adjudicated bankrupts because of defaults under the modified plan. However, it is stipulated that "in January, 1978, as well as prior thereto," the attorney for National "was endeavoring to negotiate a settlement with the Debtor whereby National Mortgage's position as a creditor in the arrangement would be purchased for a set sum." In the interest of avoiding litigation, periods during which settlement negotiations take place should not be counted for purposes of laches. *Mogavero v. McLucas, supra,* 543 F.2d at 1083. On 28 August 1978, approximately six months after the settlement negotiations had apparently broken down, National moved to have all three debtors adjudicated bankrupts. There was no lack of diligence on the part of National up to that time.[9]

On 29 December 1978, Judge Kaiser ruled on that portion of the 28 August 1978 motion which dealt with EAI. As noted above, that order made no reference to either of the Extens. On 30 April 1979, Judge Kaiser, who had not been well, retired, and returned to the bench in October 1979 for only one month. On 1 June 1979, Judge Lebowitz was appointed bankruptcy judge and faced a heavy docket. On 23 June 1980 National filed its "Application For Order Directing That Bankruptcy Be Proceeded With" in the cases of both Gerald M. Exten and Mary Ellen Exten. Under all the circumstances of the Exten proceedings, this court concludes that there was no such lack of diligence on the part of National as would prevent this court from affirming the order of Judge Lebowitz adjudicating the Extens bankrupts.[10]

\* \* \*

For the foregoing reasons, the Order of the Bankruptcy Court Adjudicating Mary Ellen Exten and Gerald M. Exten Bankrupts, dated 15 July 1981, be and it is hereby AFFIRMED.

---

**9.** In *Mogavero v. McLucas, supra,* the Fourth Circuit held that "[w]ith the period of settlement negotiations excluded, the remaining nineteen-month delay, while lengthy, is not fatal under the circumstances of this case." 543 F.2d at 1083–84.

**10.** See *Mogavero v. McLucas, supra,* 543 F.2d at 1083–84; see also *Misty Management Corp. v. Lockwood,* 539 F.2d 1205, 1211 n. 2 (9 Cir. 1976).