466 S.E.2d 827

STATE of West Virginia, DEPARTMENT OF HEALTH AND HUMAN RESOURCES, CHILD ADVOCATE OFFICE, on Behalf of ROBERT MICHAEL B., Minor Child of Trudy Mae B., Plaintiff Below,

v.

ROBERT MORRIS N., Defendant Below, Appellee,

Trudy Mae B., Plaintiff Below, Appellant.

No. 22916.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 27, 1995.

Decided Dec. 15, 1995.

Michael R. Cline, Charleston, for Appellant.

Boyce Griffith, Alum Creek, for Appellee, Robert Morris N.

R. Jeffrey Johnson, Ellen R. Archibald, Charleston, for West Virginia Department of Health and Human Resources, Child Advocate Office, Amicus Curiae.

WORKMAN, Justice:

■ This appeal is before the Court from the final order of the Circuit Court of Lincoln County, West Virginia, arising out of a paternity action. Pursuant to that order, entered on November 17, 1994, the circuit court approved and entered the family law master's recommended order. According to the family law master's recommended order, the Appellee, Robert Morris N.,[1] was directed to pay monthly child support and, in addition, a lump sum representing child support reimbursement accruing during the paternity litigation. The Appellant, Trudy Mae B., contends that the reimbursement support should have been calculated from the child's date of birth. Having considered all matters of record[2] and the parties' briefs and arguments, we reverse the circuit court's final order and remand for further proceedings consistent with this opinion.

## I.

On March 11, 1986, the Appellant gave birth to a child, Robert Michael B., who is now approximately nine years old, and who has continuously lived with and been supported by the Appellant mother. On or about October 1, 1993, the Appellant contacted the Child Advocate Office of the West Virginia Department of Health and Human Resources (hereinafter "CAO") concerning child support. In November 1993, the CAO, pursuant to West Virginia Code § 48A–6–1(e)(3) (1993),[3] filed a paternity action on the child's behalf against the Appellee asserting, inter alia, that the Appellee's duty to reimburse the Appellant for child support commenced from the child's date of birth. Upon the filing of an answer denying the averments of the complaint, the family law master entered an order requiring paternity blood testing, the results of which demonstrated a 99.99% probability that the Appellee was the child's father.

Thereafter, on August 4, 1994, the family law master conducted a hearing during which an agreement was entered into between the CAO and the Appellee. Pursuant to the agreement, the Appellee admitted the paternity of the child and consented to pay $321.57 per month child support; however, the issue of child support reimbursement remained in dispute, and argument upon that issue was received at the hearing.

Subsequent to the hearing, the family law master, on September 8, 1994, entered a recommended order finding the Appellee to be the child's father and ordering the Appellee to pay $321.57 per month for child support. The child support payments were ordered to commence as of September 1, 1994. Furthermore, the recommended order directed the Appellee to pay $3,692.37 for child support reimbursement, representing the period from October 1, 1993, when the Appellant first contacted the CAO, to August 31, 1994.[4] The reimbursement award back to the date of October 1, 1993, was based upon the family law master's determination at the August 4, 1994, hearing that "there's a limit, I think, to how far we can go back in setting

---

1. We follow our practice in domestic relations cases involving sensitive matters and use initials to identify the parties, rather than full names. See In re Jonathan P., 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. Pursuant to an order entered by this Court in August 1995, the Child Advocate Office of the West Virginia Department of Health and Human Resources filed an amicus curiae brief, which was considered in rendering this opinion.

3. This statute was amended in 1995; however, the amendments are not relevant to the outcome of this case.

4. The Appellee promptly paid the amount of $3,692.37.

the support, and the earliest date that is in the file is October of 1993, so I will set it back to October of 1993." These comments, when read in the context of the discussion of back child support, indicate that the family law master believed the date the Appellant initiated the proceedings was the earliest date she (the family law master) had the authority to order back support.[5]

There was absolutely no finding of fact or conclusion of law in the family law master's recommended order with regard to the issue of laches. The Appellee did not plead the affirmative defense of laches, nor did he offer evidence to support it. In fact, neither the word nor the concept of laches was ever raised until the October 6, 1994, hearing before the circuit court.

Following the issuance of the recommended order, the Appellant, who was a pro se [6] litigant before the family law master, obtained counsel and filed an exception to the recommended order. Specifically, the Appellant asserted that the family law master erred in failing to award child support reimbursement from March 11, 1986, the child's date of birth.

The circuit court conducted a hearing on the Appellant's exception. It was at this hearing that laches was first invoked, when the Appellee's counsel argued that laches prevented the Appellant from receiving further child support reimbursement. The Appellee's counsel argued that the laches issue was agreed upon by the parties prior to the August 4, 1994, family law master hearing, and was considered by the family law master. That alleged discussion, however, was never

set forth in the record, and the Appellant claims not to have been privy to it. Furthermore, counsel for the Appellee and the child advocate specifically stated their agreement on the record and indicated that a dispute remained with regard to the arrearage dating back to the child's birth. In contrast, the Appellant's counsel argued before the circuit court that the family law master "made no findings of any kind or nature that finds any laches or anything like that that bears in the record of this case. And I invite you [the court] to reread the transcript in that regard."

The Appellee argues on appeal that the defense of laches was asserted during the course of the hearing before the family law master by the Appellee's counsel's claim that "it [would] just be manifestly unfair" to order child support from the date of birth.

■ However, as will be set forth more fully herein, one who seeks to assert the defense of laches must show "(1) lack of diligence by the party against who the defense is asserted, and (2) prejudice to the party asserting the defense." *State ex rel. Smith v. Abbot*, 187 W.Va. 261, 264, 418 S.E.2d 575, 578 (1992) (citing *Mogavero v. McLucas*, 543 F.2d 1081 (4th Cir.1976)).

By order entered on November 17, 1994, the circuit court denied the Appellant's exception and approved and entered the family law master's recommended order. The circuit court found that the family law master "properly applied the doctrine of laches" to

---

**5.** The family law master stated during the hearing that "[i]t's not that I'm not sympathetic to your position ... but the fact is that there wasn't any suit brought until November when the first day that it appears that she did sign the papers at the Child Advocate's Office in October of 1993." The family law master further stated "the earliest date that I can find is October of 1993.... I guess, Ms. B., *morally* you're right." (emphasis added). Obviously, the family law master felt that *legally*, she was limited by the law to this decision.

**6.** The child advocate initially brought the child support claim on behalf of the child, who obviously had a community of interest in these proceedings with the mother. However, it is a clear

from the record that the child advocate, other than stating that a dispute existed with reference to child support dating back to the child's birth, remained silent and did nothing to represent the Appellant's interest on the matter before us. Under West Virginia Code § 48A–6–5 (1993), the child advocate had an obligation to provide effective representation on this issue, but failed to do so. Furthermore, the child advocate has an obligation to appeal meritorious matters to the circuit court but failed to do so, apparently forcing the Appellant to retain a private attorney. *See id.* We note that West Virginia Code § 48A–6–5 was amended in 1995; however, those amendments, which effectively rewrote the section, are not relevant to the outcome of this case.

the Appellant's requested relief.[7]

## II.

 Initially, we note that a recommended order of a family law master is reviewable by a circuit court pursuant to West Virginia Code §§ 48A–4–16 (1993) and 48A–4–20 (1993), as well as Rules 22 to 29 of the Rules of Practice and Procedure for Family Law. As stated in West Virginia Code § 48A–4–20(c): "The circuit court shall examine the recommended order of the master, along with the findings and conclusions of the master[.]" *Id.* In turn, the final order of a circuit court in such cases is reviewable by this Court. *Marilyn H. v. Roger Lee H.,* 193 W.Va. 201, 204, 455 S.E.2d 570, 573 (1995). Also, we recently held in syllabus point one of *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995) that: "In reviewing challenges to findings made by a family law master that also were adopted by a circuit court ... the underlying factual findings are reviewed under a clearly erroneous standard[,] and questions of law and statutory interpretations are subject to a *de novo* review." *Id.* at 264, 460 S.E.2d at 265, Syl.Pt. 1, in part.

## III.

The sole issue before the Court is whether the circuit court erred in holding that the affirmative defense of laches was a proper basis in this case to deny reimbursement support to the Appellant back to the child's date of birth where the Appellee failed to plead laches, failed to present evidence that would support the defense of laches, and where, indeed, the family law master made no findings of fact or conclusions of law on the defense of laches. The Appellant argues that the Appellee failed to prove that the doctrine of laches should apply, which is demonstrated not only by the absence from the record of any pleading or evidence presented by the Appellee, but also by the lack

---

7. The circuit court also concluded that the Appellant's requested relief should be denied "based upon the proper application of the doctrine of accord and satisfaction that has arisen since the *Family Law Master's Recommended Decision* ... by the express acceptance of the money recommended by the FLM[.]" We decline to address

of any finding of fact or conclusion of law concerning laches by the family law master.

A circuit court is directed by statute to order child support in paternity actions. Specifically, West Virginia Code § 48A–6–4 (1986), provided: [8]

> If the defendant, by verified responsive pleading shall admit that he is the father of the child and owes a duty of support, or if after a trial on the merits, the court or jury shall find, by clear and convincing evidence that the defendant is the father of the child, the court shall order the defendant to provide support in accordance with the provisions of this chapter [entitled 'Enforcement of Family Obligations'].

*Id.*

 We discussed the implications of West Virginia Code § 48A–6–4 in *Kathy L.B. v. Patrick J.B.,* 179 W.Va. 655, 371 S.E.2d 583 (1988), where we determined that a father may be liable for the support of a child born out of wedlock from the child's date of birth. In syllabus point two of *Kathy L.B.,* we held that:

> Upon a judicial determination of paternity, the paternal parent shall be required to support his child under W.Va.Code, 48A–6–4 (1986), and may also be liable for reimbursement support from the date of birth of the child. The right of reimbursement support on behalf of the custodian of the child is subject to the doctrine of laches.

179 W.Va. at 655, 371 S.E.2d at 583, Syl.Pt. 2.

 Further, some jurisdictions have concluded that there is a presumption as to the retroactivity of child support to the child's date of birth. For instance, the District of Columbia Court of Appeals in *In re Chadwick,* 591 A.2d 837 (D.C.1991), concluded that "retroactive child support should normally be awarded for a child born out of wedlock"

---

this conclusion of the circuit court, finding that it has no merit.

8. West Virginia Code § 48A–6–4 has been amended; however, those amendments are not relevant to the outcome of this action.

back to the child's date of birth, reasoning that:

'[T]he prospect of a retroactive award may allow a mother to use more of her own resources to care for her child during paternity proceedings, with the expectation of replenishing the resources available for her child by way of a retroactive award. On the other hand, the unavailability of a retroactive award would unduly burden a mother who would have to bear alone the financial burden of supporting a child during the period before the entry of an order granting support.'

*Id.* at 843 (quoting *Cyrus v. Mondesir,* 515 A.2d 736, 739 (D.C.1986)); *accord J.A.W. v. D.M.E.,* 591 A.2d 844, 848 (D.C.1991) (stating that retroactive child support to child's date of birth should be presumed based in part upon "the child's right to parental support begins at birth"); *see also Department of Revenue v. Roe,* 29 Mass.App.Ct. 967, 560 N.E.2d 1288, 1289 (1990); *Coleman v. Mackey,* 424 So.2d 170 (Fla.Dist.Ct.App.1983). Accordingly, we hold that there is a presumption that reimbursement child support is retroactive to the child's date of birth, absent any assertion and proof that the doctrine of laches or other affirmative defense is applicable to said reimbursement support.

▪ Therefore, we turn our focus to whether the Appellee properly asserted and proved that the affirmative defense of laches should bar support from the child's birth. In syllabus point one of *Abbot,* we held:

'Mere delay will not bar relief in equity on the ground of laches. "Laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right." ' Syllabus point 2, *Bank of Marlinton v. McLaughlin,* 123 W.Va. 608, 17 S.E.2d 213 (1941).

187 W.Va. at 262, 418 S.E.2d at 575. Accordingly, "the defense of laches is sustainable only on proof of two elements: (1) lack of diligence by the party against who the defense is asserted, and (2) prejudice to the party asserting the defense." *Id.* at 264, 418

S.E.2d at 578 (citing *Mogavero v. McLucas,* 543 F.2d 1081 (4th Cir.1976)).[9]

▪ Further, as provided for in West Virginia Rule of Civil Procedure 8(c): "In pleading to a preceding pleading, *a party shall set forth affirmatively* accord and satisfaction ... *laches* ... statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." *Id.* (emphasis added). Pursuant to Rule 8(c), the Appellee should have raised laches in his answer to the complaint as an affirmative defense, but failed to do so. However, West Virginia Rule of Civil Procedure 15(b) provides that when issues not raised by the pleadings "are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." *Id.* As we held in syllabus point four of *Nellas v. Loucas,* 156 W.Va. 77, 191 S.E.2d 160 (1972):

According to Rule 15(b), W.Va.R.C.P.[,] an amendment to a pleading to assert an affirmative defense offered during or after trial over the objection of the opposing party should not be accepted unless (1) it permits the presentation of the merits of the action; (2) the adverse party will not be prejudiced by the sudden assertion of the defense; and (3) the adverse party is given ample opportunity to meet the issue.

156 W.Va. at 77, 191 S.E.2d at 161; *accord* Syl.Pt. 2, *Hanshaw v. City of Huntington,* 193 W.Va. 364, 456 S.E.2d 445 (1995).

In applying these principles to the case sub judice, it is undisputed that the Appellee never pleaded laches as affirmative defense in his answer to the CAO's complaint. Further, it is just as apparent that the Appellee never properly raised the doctrine of laches before the family law master. The only tangentially related reference that could even arguably be construed as raising the issue under Rule 15(b) occurred during the following exchange by the Appellee's attorney:

I believe if ... my client, was sworn, he would say that the only communication that he ever had from her when she had a child by him [was] that she didn't want anything for [sic] him. She had a legal

9. *Compare Hartley v. Ungvari,* 173 W.Va. 583, 318 S.E.2d 634 (1984).

right to assert paternity at that time and to have this man support the child. Just like she's doing right now, if we had just done it eight years earlier, that's all, and he would have been making monthly payments all of this time, he would have had visitation during all of this time, and all things that usually go on in these things, *we think it would just be manifestly unfair to come back now and say eight years later we're going to forgive all of that, but this man's nothing but a minimum wage earner to begin with.* (emphasis added). In response to this argument by the Appellee, the Appellant responded that she had "begged" the Appellee to visit his child, that she had called him when she was having financial problems supporting the child due to the child's fragile medical condition, and that the Appellee knew the child was his.

 First and foremost, a lawyer has a duty to plead and prove his case in accordance with established court rules. As the United States Court of Appeals succinctly stated in *Teague v. Bakker*, 35 F.3d 978 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1107, 130 L.Ed.2d 1073 (1995): "We would in general admonish all counsel that they, as officers of this Court, have a duty to uphold faithfully the rules of this Court." 35 F.3d at 985 n. 5. Further, "[a] skeletal 'argument', really nothing more than an assertion, does not preserve a claim.... Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991); *accord Teague*, 35 F.3d at 985 n. 5; *State v. Honaker*, 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994). At this juncture, had counsel for the Appellee desired to amend his pleading to assert this affirmative defense, he should have so indicated clearly on the record for the family law master to determine whether such amendment could be accepted under Rule 15(b). The bare claim that something is "manifestly unfair" or the mere existence of delay [10] does not begin to meet the Appellee's burden of proving either lack of dili-

gence by the Appellant or "prejudice to the party asserting the defense," which is necessary in order to sustain the defense of laches. *Abbot*, 187 W.Va. at 264, 418 S.E.2d at 578. Further, a mere statement certainly does not preserve any claim that the Appellee may have had with regard to laches. *See Dunkel*, 927 F.2d at 956.

Even assuming, arguendo, that the two words "manifestly unfair" are sufficient proof that the Appellee raised the defense of laches, pursuant to Rule 15(b), we still cannot conclude based on the record before us that the laches issue was "tried by express or implied consent of the parties." *Id.* In order to conclude that the Appellant expressly or impliedly consented to the trial of the laches issue, attention must be given to the fact that the Appellant was essentially unrepresented by counsel, while the Appellee had counsel present. As the United States Court of Appeals for the District of Columbia so aptly stated in the context of a motion for summary judgment involving a pro se litigant:

> appellant in this case was not represented by counsel; and nothing in the record indicates that he was notified that failure to respond to appellees' motion and affidavit would result in the entry of summary judgment against him.... We hold that before entering summary judgment against appellant, the District Court, as a bare minimum, should have provided him with fair notice of the requirements of the summary judgment rule. We stress the need for a form of notice sufficiently understandable to one in appellant's circumstances fairly to apprise him of what is required.

*Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C.Cir.1968); *accord Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 767 (2d Cir.1983) ("Notice is particularly important when a party is proceeding *pro se* and may be unaware of the consequences of his failure to offer evidence bearing on triable issues.");

---

10. It is rather disingenuous for an able-bodied, fully-employed child support obligor who has paid nothing during the first nine years of a child's life to complain of delay, for the irony of such a claim is that an obligee seeking to eke out a living for a child frequently has little recourse due to the expense and difficulty associated with obtaining effective legal services to assert such a claim.

*Roseboro v. Garrison,* 528 F.2d 309 (4th Cir. 1975) (stating that a pro se plaintiff is entitled to form of notice recognized in *Hudson* as providing reasonable safeguard when confronted with possible summary judgment).

The record is clear that if the Appellee was attempting a Rule 15(b) amendment to the pleadings, that Appellant did not understand that the Appellee had just asserted the doctrine of laches in attempt to defeat her request for reimbursement child support, nor did she understand her rights to oppose such motion or—even if it was granted—to have the opportunity to meet the issue. Moreover, the record demonstrates that the family law master did not even acknowledge that the Appellee had amended his pleadings, via Rule 15(b), to assert the defense of laches. If the family law master did not recognize that this occurred, then how can we hold that a pro se litigant knew that this occurred?

 Finally, it is also undisputed that the Appellee failed to meet the criteria this Court established in *Nellas* in order for a Rule 15(b) amendment to occur. Specifically, there was no showing by the Appellee that the Appellant was not prejudiced by the sudden assertion of the laches defense during the family law master hearing and that the Appellant was given ample opportunity to meet the issue of laches. *See* 156 W.Va. at 77, 191 S.E.2d at 161, Syl.Pt. 4.

Instead, the decision by the family law master seems clearly to have been based upon a misapplication of the law as it relates to reimbursement child support. Questions of law are reviewed by this Court de novo. *See Burnside,* 194 W.Va. at 264, 460 S.E.2d at 265, Syl.Pt. 1, in part. As discussed *supra* in the text of this opinion, the only limitation on reimbursement child support back to the date of the child's birth is the doctrine of laches. *See* Syl.Pt. 2, *Kathy L.B.,* 179 W.Va. at 655, 371 S.E.2d at 583. It is clear that the family law master never considered laches in her recommended order and, therefore, misconstrued the law relating to reimbursement child support.

Having reviewed the transcript of the hearing before the family law master and the family law master's recommended order, we find that the family law master's recommended order is devoid of any finding of fact or conclusion of law regarding laches. Further, the family law master did not resolve any issue regarding laches at the August 4, 1994, hearing. All that the family law master did conclude, based on a misapplication of the law,[11] was that child support reimbursement could be awarded no earlier than October 1, 1993, the date the Appellant contacted the CAO. Finally, the Appellee's assertion that laches was discussed prior to the August 4, 1994, hearing or that any agreement was made on that issue is totally unsupported in the record before this Court.

As we recently stated in *Young v. Young,* 194 W.Va. 405, 460 S.E.2d 651 (1995), we will not allow a party to "have a second 'bite of the apple[,]'" both because of the need for judicial economy in family issues, as well as because of the fundamental unfairness. *Id.* at 410, 460 S.E.2d at 656. In *Young,* the party failed to participate at all, and in the instant case, the Appellee failed to raise the issue effectively. *See id.* The Appellee could have properly pleaded and offered proof of the affirmative defense of laches before the family law master and the family law master could have then properly considered the applicability of laches to this action. However, the Appellee, who was represented by a lawyer throughout these proceedings, dropped the ball on that defense, and we are not going to give him a "second 'bite of the apple.'" *Id.* We conclude that the Appellee, having failed to properly plead or prove the defense of laches, is liable for reimbursement support for his child from the child's birth.

Based on the foregoing, the decision of the Circuit Court of Lincoln County is hereby reversed and remanded for the entry of an order consistent with this opinion.

Reversed and remanded with directions.

---

11. *See supra* note five.