**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **K.R., D.R., S.F.-1, and C.V.**

**No. 23-8** (Grant County CC-12-2022-JA-11, CC-12-2022-JA-12, CC-12-2022-JA-13, and CC-12-2022-JA-14)

**MEMORANDUM DECISION**

Petitioner Mother S.F.-2[1] appeals the Circuit Court of Grant County's December 6, 2022, order terminating her parental rights to the children, K.R., D.R., S.F.-1, and C.V.[2] Petitioner argues that her due process rights were violated during the DHS's pre-petition investigation, she was not offered adequate services, and she should have been granted a less restrictive disposition. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming, in part, vacating, in part, and remanding the circuit court's June 16, 2022, and December 6, 2022, orders is appropriate in accordance with the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure.

In April 2022, the DHS filed a petition against petitioner and the father of S.F.-1, alleging that petitioner failed to supply four children with necessary shelter, abused illegal substances, and supplied illegal substances to the father of S.F.-1. Notably, the DHS only sought custody of S.F.-1 and indicated that petitioner's remaining children were safe in the sole custody of their respective nonabusing fathers. The only allegation relating to any of the remaining children was that the oldest child, K.R., disclosed to a Child Protective Services ("CPS") worker that petitioner knocked

---

[1]Petitioner appears by counsel Jason T. Gain. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Counsel Meredith H. Haines appears as the children's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-1-2, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated, effective January 1, 2024, and is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because petitioner and the child S.F.-1 share the same initials, we will refer to them as S.F.-2 and S.F.-1.

1

on her window at her father's house early one morning asking her to urinate in a cup and that petitioner had requested she do this on two prior occasions.

Petitioner waived her right to a preliminary hearing and filed a written stipulation to the allegations in the DHS's petition. The court held an adjudicatory hearing in June 2022, at which time the court engaged in extensive questioning of petitioner to ensure the voluntariness of the stipulation. Based on petitioner's affirmative responses, the court found the children abused and neglected and adjudicated petitioner an abusing and neglecting parent. The court, however, failed to make specific findings in regard to all of the children and how each child was abused and/or neglected. The court granted petitioner supervised visitation upon the condition that she produce three consecutive clean drug screens.

Petitioner thereafter filed a motion for a post-adjudicatory improvement period. The court was set to address the motion at a hearing in July 2022, and the DHS had prepared a case plan ready for petitioner's signature; however, petitioner did not appear. Petitioner's counsel proffered that she may have been in the emergency room as she was admitted two days prior.

The court proceeded to disposition, holding a final dispositional hearing in November 2022. The court heard testimony from a CPS worker who stated that petitioner did not participate in any services offered throughout the proceeding and that she screened positive for methamphetamine and suboxone as recently as October 2022. A site supervisor for Grant County Community Corrections testified that petitioner was scheduled for about seventy drug screens but only appeared for nine. Of those nine, petitioner tested positive for methamphetamine and suboxone every time. Although petitioner indicated she had a prescription for suboxone, she never produced any confirming documentation. Petitioner testified and admitted that CPS took custody of S.F.-1 because of her drug use and homelessness. Although she stated that she would be willing to participate in services, she conceded that she was previously given the opportunity but didn't do so because "everything was hectic at the time," and she "didn't know how to go about it." When asked why she did not appear for scheduled drug screens in order to be awarded visitation, she said, "to be honest, I just knew I was going to fail" and she did not "want to come in and look stupid." While petitioner testified to efforts to secure housing, she admitted she was still homeless. Based on the evidence presented, the court found that petitioner had not shown progress and due to her lack of participation in the case, there was no reasonable likelihood that conditions which led to the filing of the petition could be substantially corrected in the near future. Further, finding no less restrictive alternative available, the court found it to be in the children's best interests to terminate petitioner's parental rights.[3] It is from this order that petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re*

---

[3] S.F.-1's father's parental rights were also terminated. The permanency plan for S.F.-1 is adoption by relative placement. The permanency plan for K.R., D.R., and C.V. is to remain in the custody of their respective nonabusing fathers.

[4] Counsel for petitioner indicated in the appellate brief that this appeal was filed pursuant to Rule 10(c)(10)(b) of the West Virginia Rules of Appellate Procedure.

*Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before we can consider petitioner's arguments regarding termination, we must first address the court's adjudication of the children, K.R., D.R., and C.V., who were in the custody of their nonabusing fathers at the time of the filing of the petition.[5] We have held that,

> "[f]or a circuit court to have jurisdiction over a child in an abuse and neglect case, the child must be an 'abused child' or a 'neglected child' as those terms are defined in West Virginia Code § 49-1-201[]. Pursuant to West Virginia Code § 49-4-601(i)[], a circuit court's finding that a child is an 'abused child' or a 'neglected child' must be based upon the conditions existing at the time of the filing of the abuse and neglect petition." Syl. Pt. 8, *In re C.S. and B.S.*, 247 W. Va. 212, 875 S.E.2d 350 (2022).

Syl. Pt. 2, *In re B.V.*, 248 W. Va. 29, 886 S.E.2d 364 (2023). We further clarified that,

> [t]o exercise subject matter jurisdiction, the court must make specific factual findings explaining how each child's health and welfare are being harmed or threatened by the allegedly abusive or neglectful conduct of the parties named in the petition. Due to the jurisdictional nature of this question, generalized findings applicable to all children named in the petition will not suffice; the circuit court must make specific findings with regard to each child so named.

*Id.* at --, 886 S.E.2d at 366, syl. pt. 3. Here, although only S.F.-1 was in petitioner's care at the time the abuse and neglect petition was filed, the court found all four children to be abused and neglected, making generalized findings applicable to all children named in the petition. However, as noted above, the DHS's petition failed to include any allegations of abuse and neglect specific to any of the other children. While the petition did include facts concerning petitioner's interactions with K.R., it failed to include how this conduct constituted abuse and/or neglect. Due to the jurisdictional nature of this issue, we must remand the matter for entry of an adjudicatory order complete with the requisite findings under the statute. It follows that because the circuit court failed to explain how each child met the definition of "abused" or "neglected," it was error to continue to terminate petitioner's parental rights to K.R., D.R., and C.V. *See* Syl. Pt. 3, *In re A.P.-1*, 241 W. Va. 688, 827 S.E.2d 830 (2019) ("[B]efore a court can begin to make any of the dispositional alternatives under W. Va. Code, [49-4-604], it must hold a hearing under W. Va. Code, [49-4-601], and determine 'whether such child is abused or neglected.' Such a finding is a prerequisite to further continuation of the case.") (citation omitted). Accordingly, the circuit court's adjudicatory order of July 16, 2022, and dispositional order of December 6, 2022, must be vacated, in part, to the extent they apply to K.R., D.R., and C.V.

As to termination of petitioner's parental rights to the child S.F.-1, we find no error. Before this Court, petitioner argues that her due process rights were violated during the pre-petition investigation. Specifically, petitioner argues that the petition was based on a falsehood told to the

---

[5]Although not raised by petitioner as an assignment of error, we have recognized that "the court should sua sponte address the issue [of jurisdiction] as early in the proceeding as possible." Syl. Pt. 5, in part, *In re Z.H.*, 245 W. Va. 456, 859 S.E.2d 399 (2021).

DHS by one of the fathers when he claimed that she attempted to collect urine from K.R.; she was homeless because of a housefire and not due to any fault of her own; and the DHS violated the "Gibson Decree," when they asked her to sign a protection plan without her attorney present. *See Gibson v. Ginsberg*, 989 F.Supp. 772 (S. D. W. Va. 1996). None of these issues were raised before the circuit court and the evidence in the record on appeal does not support these claims. "'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)." *Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009). Therefore, we decline to consider petitioner's arguments on appeal.

As an additional assignment of error, petitioner argues that the circuit court erred by terminating her parental rights when she was not offered adequate help or services. We find petitioner's argument wholly unsupported by the record. Petitioner's own testimony revealed that she was given opportunities to participate in services offered by the DHS, but she did not attend because "everything was hectic," she did not have transportation, and other excuses. Moreover, the DHS was prepared with a case plan at the July 2022 hearing, but petitioner was not present. Therefore, the circuit court was correct in finding petitioner failed to participate in these proceedings.

Petitioner further argues that the circuit court erred in terminating her parental rights without imposing a less restrictive dispositional alternative. We have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Here, the circuit court properly concluded that there was no reasonable likelihood that conditions of neglect or abuse could be substantially corrected because of petitioner's behavior throughout the case, which never improved. Petitioner stipulated to her drug abuse issues and the evidence revealed that she continued to test positive for illegal substances as recently as one month before disposition. The circuit court granted petitioner visitation if she could produce a clean drug screen; however, she never produced a clean drug screen. In that regard we have stated that, "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Moreover, petitioner admitted to her failure to participate in

services and the court found she has not shown any progress.[6] We, therefore, find no error by the circuit court in its termination of petitioner's parental rights to the child S.F.-1.[7]

For the foregoing reasons, we affirm that portion of the December 6, 2022, order terminating petitioner's parental rights to the child S.F.-1; however, as to petitioner's rights to K.R., D.R., and C.V., we vacate the circuit court's June 16, 2023, adjudicatory order and the December 6, 2022, termination order and remand for further proceedings consistent with this decision.[8] The Clerk is directed to issue the mandate contemporaneously herewith.

Affirmed, in part, Vacated, in part, and Remanded with directions.

**ISSUED**: February 13, 2024

**CONCURRED IN BY**:

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

**DISSENTING**:

Chief Justice Tim Armstead

Armstead, Chief Justice, dissenting:

---

[6]Petitioner further argues that the circuit court erred by not allowing the children's grandmother to testify at disposition. However, upon our review of the record, the court did not prohibit petitioner from offering any evidence. Rather, the court specifically asked at disposition if there were any further witnesses, to which petitioner's counsel replied, "no, your Honor." Therefore, we find no error in this regard.

[7]Petitioner makes a few other general assertions in her appellate brief regarding alleged error by the circuit court; however, those arguments need not be addressed as we find they are unsupported skeletal arguments. *See State, Dept. of Health v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." (Internal citations omitted).).

[8]The vacation of these orders applies only to petitioner. Those orders also adjudicated and terminated the parental rights of the father of S.F.-1, and he did not appeal those decisions. Accordingly, the portions of the orders concerning the father of S.F.-1 remain in full force and effect.

I concur with the majority's resolution of this case as it relates to D.R., S.F-1, and C.V. I dissent, however, to the majority's resolution as it relates to K.R. Although the petition filed by DHS failed to make specific allegations as to D.R., S.F.-1, and C.V., the petition contained specific allegations concerning petitioner's interactions with K.R. The petition filed by DHS alleged that on April 13, 2022, K.R. told her father that petitioner had knocked on her window "early that morning and asked her to urinate in a cup for her." The CPS worker followed up with K.R., and K.R. confirmed that this occurred. At that time, the CPS worker learned that petitioner had also asked K.R. to provide urine on two previous occasions. For these reasons, I would have set this case for oral argument to thoroughly address the allegations as they relate to K.R. Accordingly, I concur, in part, and respectfully dissent, in part.