# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Ronald E. Lambert Jr.,**
**Petitioner Below, Petitioner**

**FILED**

**November 16, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 17-0925**  (Boone County 06-C-60)

**Ralph Terry, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**


## MEMORANDUM DECISION

Petitioner Ronald E. Lambert Jr., by counsel Benjamin M. Mishoe, appeals the September 18, 2017, order of the Circuit Court of Boone County that denied his amended petition for a writ of habeas corpus following his 2003 guilty plea to one count of kidnapping and one count of felony murder. Respondent Ralph Terry, Superintendent, Mt. Olive Correctional Complex,[1] by counsel Julianne Wisman, filed a response in support of the circuit court's order. Petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On November 23, 2001, Toni and Melissa Sergeant, mother and daughter, were walking along Mud River in Boone County, when petitioner drove by and offered to give them a ride home. The women knew petitioner and accepted the ride. Petitioner proceeded to stop at a store where he purchased duct tape. He then drove the women to a remote location where he tied them up with the tape and raped them at knifepoint.

Melissa Sergeant later told police that after the assaults, petitioner appeared to come out

---

[1] Effective July 1, 2018, the positions formerly designated as "wardens" are now "superintendents." *See* W.Va. Code § 15A-5-3. At the time of the filing of this appeal, Thomas McBride was then warden at Mt. Olive Correctional Complex and, as such, was originally listed as the respondent below. However, the acting warden, now acting superintendent, is Ralph Terry. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

of a blackout because he asked them what had happened and what he had done. When the women told him, he cut them loose, and they ran away. According to the criminal complaint, petitioner told the women that he was sorry and that they should call the police. Toni Sergeant, while attempting to wave down a car, was struck by a vehicle, and killed.

Police officers responded to the single vehicle accident, found Toni, and attempted to question Melissa. However, Melissa appeared to be in shock and was only able to advise police that she had ridden to the area with petitioner. Police officers found petitioner asleep in his vehicle about one and a half miles up the hollow. Petitioner admitted being with the two women and also advised that he had taken drugs, blacked out, and needed drug treatment. He also admitted to having a knife in his pocket. Petitioner was taken to the State Police barracks. He refused medical treatment and was taken to his parents' house.

The next day, Melissa called the police and recounted the abduction and rape by petitioner from the night before. Police picked up petitioner and took a videotaped statement from him in which he again admitted to picking up the two women. Officers later found duct tape in the vehicle. An examination of Toni's body revealed vaginal bruising consistent with forcible sex and fragments of duct tape were found on her clothing. DNA testing also revealed petitioner's DNA to be in the sperm found in Melissa's underwear that she was wearing when she was raped.

Petitioner gave another voluntary statement to police. According to the criminal complaint, he "admitted being in the vehicle with [the victims] while they were duct taped. The accused also stated that he told the victim's [sic] that he was sorry for what he did and that he should go to prison for it." Petitioner was arrested on November 24, 2001, and indicted on January 25, 2002, on two counts of kidnapping or holding hostage, three counts of first degree sexual assault, and one count of felony murder.

On June 19, 2002, petitioner's appointed counsel, Robert White,[2] moved to withdraw.[3] Attorney White also filed a motion for a psychiatric and psychological examination (hereinafter "psychiatric evaluation") of petitioner. Following a hearing, the circuit court denied the motion to withdraw and granted the motion for a psychiatric evaluation.

On the scheduled trial date, February 26, 2003, petitioner moved to continue the trial date in order to obtain individual DNA testing and to complete the psychiatric evaluation. The motion was granted. However, at the same time, petitioner expressed his desire to proceed to trial quickly without the benefit of the individual DNA testing and the psychiatric evaluation, against

---

[2] Petitioner was also represented by Michael Blevins.

[3] Petitioner had previously filed an ethics complaint against Attorney White, and also filed a motion to dismiss him as counsel. Petitioner alleged that White refused to accept phone calls and violated various rules of professional conduct. Petitioner also sent a letter to this Court in which he complained about Attorney White.

his lawyer's advice. Ultimately, however, petitioner agreed to the continuance. A second order for a psychiatric evaluation was entered on March 6, 2003. Trial was scheduled for June 3, 2003.

On March 24, 2003, petitioner was evaluated by the Charleston Psychiatric Group. However, on April 3, 2003, before the psychiatric report was submitted, a plea hearing was conducted because petitioner and the State had negotiated a plea deal. At the hearing, the State advised the court that the psychiatric evaluation "was mainly something [petitioner] wanted done to explore all possible defenses, not something that counsel thought was necessary based on their observations of [him]." The State further advised the court that it anticipated that the report would conclude that petitioner was competent. Defense counsel did not disagree with the purpose of the evaluation as stated by the State nor in any way suggest a belief that, to the contrary, the evaluators would conclude that petitioner was not competent.

During the course of the plea hearing, the circuit court conducted a lengthy and detailed colloquy with petitioner, during which petitioner affirmed that he was satisfied with his counsel, that counsel did everything he asked them to do in defense of his case, that he had sufficient time and opportunity to meet with them, and that he did not feel rushed into making a decision to plead guilty. The circuit court went over the plea agreement and petitioner stated his recollection of the events for which he was pleading guilty. The court accepted petitioner's guilty plea to one count of kidnapping and one count of felony murder.

Thereafter, the psychiatric report, dated April 8, 2003, was received by the circuit court on April 11, 2003. The fifteen-page report describes petitioner, his history of complaints and subjective symptoms, his past medical history, his background (as described by petitioner), his account of the crimes alleged, and his mental status examination.[4] The evaluators reported

---

[4] The psychiatric report states that petitioner, who was then twenty-eight years old, had an injury in 1999 or 2000, "from a fight and a car wreck" and was found to have "[b]lood on the brain and a busted skull" for which a metal plate was placed in his head. He saw a psychiatrist from age six to fourteen. ("They tried to say I had different personalities. My family was having problems with me, it wasn't me. They said I did things. I wouldn't take the medicine, it made me drowsy and sleepy.") Petitioner also informed evaluators that he had been hospitalized ten years earlier because "I went off, kicked the door, threatened a boy in a store and family had me locked up." He further stated that he suffered from black outs and was a special education student; he described heavy alcohol and drug use prior to his incarceration, and a history of hearing voices when he was a teenager. According to the report, "since he had been in jail he has heard them again." Petitioner further advised that he had "been arrested twice for driving under the influence, four or five domestic violence petitions with [his first wife], destruction of government property, fighting in the courtroom, and . . . '[a] few assaults on police officers.'"

The evaluators found petitioner to be "fully oriented to time, place, and person. Recent and remote memory were intact and attention span was average. His common sense knowledge base was good and his social judgment in contrived situations was marginal." According to the report, petitioner knew precisely the charges against him, including the penalties; stated that his attorney and "that prosecutor" would be in charge of the courtroom during the trial; and that (continued . . .)

several diagnoses including "[a]lcohol [d]ependence," "[a]djustment [d]isorder [w]ith [d]epressed [m]ood," "[c]ocaine [a]buse [d]isorder," "[c]annibis [a]buse [d]isorder," and "[l]earning [d]isability in [r]eading and [m]ath." The evaluators determined that petitioner

> is competent to stand trial. We base this on the fact that he has a rational appreciation of the courtroom procedures and the charges against him, as well as the possible penalty. While he lacks in fully understanding the factual aspects of the role of the judge [sic] can be explained to him by his attorney. He has the capacity to assist his attorney in his own defense.

> It is further our opinion that at the time of the alleged crime [petitioner] was criminally responsible for his action. He had no mental disease or defect which would have preventing [sic] him from appreciating the wrongfulness of his conduct, nor which would have prevented him from conforming his conduct to the requirements of law.

> [Petitioner] is being treated for his Adjustment Disorder with Depression with Elavil and that should continue. His substance abuse problems are in remission due to incarceration.

It was later discovered that the psychiatric report contained an error—that is, the written assessment (consisting of seven pages) from a portion of *another patient's* report (a patient with the same first and last name as petitioner but with a different middle name) had been erroneously inserted into petitioner's evaluation. However, the evaluation of the other patient concluded that he *was not* competent to stand trial while the ultimate conclusion from petitioner's report was that petitioner *was* competent to stand trial.

A sentencing hearing was held on December 3, 2003, during which petitioner denied responsibility for the crimes. He was sentenced to two life sentences, with mercy, that were ordered to run consecutively.

On April 6, 2006, petitioner, pro se, filed a petition for a writ of habeas corpus, after which protracted habeas proceedings ensued. Petitioner, by newly appointed counsel, filed a "verified petition for Omnibus Writ of Habeas Corpus" on February 28, 2007, in which he alleged claims of ineffective assistance of counsel, double jeopardy, and insufficiency of the evidence. Evidentiary hearings were held on November 3, 2009, and April 14, 2011.

At the latter hearing, the error in the psychiatric report submitted to the circuit court in April of 2003 was explained by the evaluators in a "Memo to Record" dated December 16, 2009

---

> [w]hen asked the role of the judge, he said "He tells us to do this or that." When asked the role of the jury, he said "Says if you're innocent or guilty." He said the prosecutor's role was to prosecute and his attorney was "[s]upposed to defend me, but he don't know what he's doing, lets the prosecutor do what he wants."

as follows:

> At one time in competency evaluations, the Court stipulated that both the psychiatric and psychological evaluations be combined into one report. This procedure was completed after the psychiatrist had reviewed the psychological evaluation, his psychiatric examination, reviewed all accompanying records, conferred with the psychologist, completed his conclusions, and dictated his report.

In this case, the memo states, the psychological evaluation of one Ronald *Ray* Lambert (performed on February 10, 2003) was erroneously inserted into the report of petitioner, who was evaluated on March 24, 2003. Further, the memo stated,

> [t]his procedure was performed by the transcriptionist after all dictation was completed. Unfortunately, the examiners did not notice this discrepancy when signing the final report of [petitioner]. The correct psychological evaluation report which was used to formulate the conclusions and opinions is retained in [petitioner's] file.

Finally, the memo stated, in petitioner's case, "all conclusions were made *before* the reports were combined; therefore, *all conclusions by the evaluators are correct and based on the correct data* even though the incorrect psychological report was incorporated into the report submitted to the Court." (Emphasis added). Dr. Rosemary Smith, the evaluating psychologist, testified at the April 14, 2011, habeas hearing and similarly explained the error in the report.

Petitioner filed an amended habeas petition on or about May 18, 2016, in which he alleged that his constitutional due process right to avoid being tried while mentally incompetent was violated and that he received ineffective assistance of counsel. Following yet another hearing, the circuit court denied petitioner's request for habeas relief. This appeal followed.

Our review of the circuit court's order denying respondent's petition for a writ of habeas corpus is governed by the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines,* 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W. Va. 375, 701 S.E.2d 97 (2009).

In his first assignment of error, petitioner argues that the circuit court denied him an

5

adequate procedure to determine his mental competency to enter a plea[5] by accepting his plea before it received the psychiatric report and then later relying on the report in denying habeas relief because the report included erroneous findings (i.e., written assessments from another patient's report). Petitioner further contends that because the circuit court entered multiple orders in which it found that a competency evaluation was necessary, it was error for the court to later conclude that there was no basis upon which to order such an evaluation in the first place. Petitioner argues that the court's failure to hold a competency hearing violated his right to procedural due process.[6]

We find no error. "A defendant has both a substantive and a procedural due process right to avoid being tried while mentally incompetent." *State v. Sanders*, 209 W. Va. 367, 377, 549 S.E.2d 40, 50 (2001). *See also Id.* at 370, 549 S.E.2d at 43, at syl. pt. 1 ("It is a fundamental guaranty of due process that a defendant cannot be tried or convicted for a crime while he or she is mentally incompetent" (internal citations omitted).). In this case, petitioner does not claim that he was incompetent at his plea hearing. *See Id.* at 377, 549 S.E.2d at 50 ("In order to bring a successful substantive competency claim, a defendant must prove that he or she was, in fact, incompetent at trial."). Rather, he argues that the procedures to determine his competency to make a plea were inadequate. "As for a procedural due process claim . . . a defendant need only demonstrate that he or she was denied an adequate procedure for determining mental competency after the trial court was presented with evidence sufficient to prompt good faith doubt regarding incompetency." *Id.*

---

[5] "The test for mental competency to stand trial and the test for mental competency to plead guilty are the same." Syl. Pt. 2, *State v. Cheshire*, 170 W. Va. 217, 292 S.E.2d 628 (1982). Thus, "the procedures specified in [West Virginia Code §§ 27-6A-2 and -3] are . . . applicable to a determination of a defendant's competence to enter a guilty plea." *Cheshire*, 170 W. Va. at 220, 292 S.E.2d at 630.

[6] Petitioner also attempts to argue that the State agreed to a competency evaluation during the underlying criminal proceedings and is now estopped from arguing that such an evaluation was unnecessary. However, petitioner fails to cite to a single legal authority in support of this argument. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and *law presented*, the standard of review applicable, and *citing the authorities relied on* . . . [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal." (Emphasis added). *See* December 10, 2012, Administrative Order (stating that "*[b]riefs that lack citation of authority* [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. . . . and "*[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented* and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. (Emphasis added)). Here, petitioner's argument that the State is estopped from arguing that a psychiatric evaluation was unnecessary is inadequate as it fails to comply with Rule 10(c)(7) and our December 10, 2012, administrative order. Therefore, the Court will not address it.

The habeas court determined that petitioner failed to present sufficient evidence suggesting that he was not competent to stand trial, that the record was devoid of such evidence, and that "there was nothing to indicate to the [c]ourt before or during his plea that he was incompetent." The habeas court emphasized that "a defendant is entitled to the pr[e]scribe[d] procedure for a competency evaluation *after* the trial court is presented with evidence to prompt a good faith doubt regarding competency. . . . There was no evidence presented by [petitioner] to suggest that he was not competent to stand trial." (Emphasis in original). In support of this finding, the habeas court determined that the head injury petitioner sustained in childhood was "insignificant" relative to his competency; that "there was no evidence of irrational behavior other than the crimes [he] committed" in this case; that "[t]he record reveals no prior history of severe behavioral abnormalities[;]" and that defense counsel believed petitioner to be competent. Furthermore, the habeas court noted that, during the course of the proceedings prior to and including the plea hearing, petitioner

> demonstrated that he was fully aware of courtroom procedures, the role of his counsel, the burden of the State, the penalties he was facing, and other aspects of the judicial system; further, he communicated to the Court multiple times on the record about being moved from a jail facility to a DOC facility. There was no evidence that any of his behaviors while incarcerated would lead one to believe he was suffering from a mental disorder or defect that would leave his competency in doubt.

The habeas court also noted that the record below showed that petitioner "had the capacity to assist his attorney in his own defense. These conclusions are further evidenced in the many motions he drafted and filed on his own, and by his interactions with the [c]ourt at the hearings which can be seen in the transcripts."

Notwithstanding petitioner's argument to the contrary, the purpose behind petitioner's request for a psychiatric evaluation was not necessarily to determine competency. At the plea hearing, the State represented to the court that

> there was a motion for a psych eval granted, and counsel and I have discussed the issue roundly. It was mainly something [petitioner] wanted done to explore all possible defenses, not something that counsel thought was necessary based on their observations of the defendant. He has been evaluated by Dr. Ralph Smith. We have every anticipation that he'll be found competent.

Petitioner did not refute this representation. In fact, at the November 3, 2009, habeas hearing, defense counsel confirmed that he requested a psychiatric evaluation because he "was exploring whether or not [petitioner] had a diminished capacity defense[,]" and that "that's a routine motion to file in situations like this."

Finally, this Court cannot ignore the fact that petitioner was evaluated by a psychiatrist and a psychologist, who concluded, without equivocation, that he was competent to stand trial. The "Memo to Record" by the evaluators and Dr. Rosemary Smith's testimony clarified that the ultimate conclusion of competency was made before the transcriptionist erroneously inserted into petitioner's psychological report a portion of another patient's evaluation. This clerical error was

7

harmless insofar as it did not impact the critical conclusion that petitioner was competent.

Therefore, we conclude that the habeas court did not abuse its discretion in denying habeas relief on the ground that petitioner was denied procedural due process regarding competency or was entitled to a competency hearing prior to entry of his guilty plea.

In his second assignment of error, petitioner argues that the habeas court erred in failing to find that his defense counsel was ineffective. In syllabus points five and six of *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995), this Court held:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Petitioner states that defense counsel failed to prepare an adequate defense by submitting DNA evidence to his expert only six days before trial; "forg[etting] that . . . a psychological evaluation was ordered and necessary[;]" failing to request a competency hearing; and failing to realize that the psychiatric report submitted after petitioner entered a plea contained erroneous findings. In support of his claim that defense counsel was inadequate under the *Strickland/Miller* test, petitioner states simply that "it is difficult to conclude Mr. Lambert's counsel acted within the 'broad range of professionally competent assistance[.]'" This argument is clearly inadequate. Furthermore, petitioner fails to present any argument that the second prong of the *Strickland/Miller* test is satisfied – that is, that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Miller*, 194 W. Va. at 6, 459 S.E.2d at 117, at syl. pt. 5, in part. This Court has cautioned that "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.] Judges are not like pigs, hunting for truffles buried in briefs." *State, Dept. of Health v. Robert Morris N.,* 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995). *See also State v. LaRock,* 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining issues presented for review, issues which are . . . mentioned only in passing but are not supported with pertinent authority, are not considered on appeal."). As we have explained,

> [a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.

Syl. Pt. 4, in part, *State v. Myers,* 229 W.Va. 238, 728 S.E.2d 122 (2012) (internal quotations and citations omitted). As a result of petitioner's failure to adequately brief this issue, we decline to consider it.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 16, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment