# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2020 Term

_____

No. 18-0418
_____

FILED
April 6, 2020
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**JAMES R. MEADOWS,**
Petitioner Below, Petitioner

**V.**

**R.S. MUTTER, DEPUTY SUPERINTENDENT,
MCDOWELL COUNTY CORRECTIONS,**
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Monroe County
The Honorable Robert Irons, Judge
Civil Action No. 13-C-69

**AFFIRMED**
_____

Submitted: March 3, 2020
Filed: April 6, 2020

Joseph T. Harvey
Harvey & Janutolo
Blueflield, West Virginia
Paul R. Cassell
Cassell & Crewe, P.C.
Wytheville, Virginia
Attorneys for the Petitioner

Patrick Morrisey
Attorney General
Benjamin E. Fischer
Assistant Attorney General
Holly M. Flanigan
Assistant Attorney General
Charleston, West Virginia
Attorneys for the Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.      "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review."  Syllabus point 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

2.      "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Syllabus point 5, *State v. Mill*er, 194 W. Va. 3, 459 S.E.2d 114 (1995).

3.      "In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's

i

strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue." Syllabus point 6, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

4.      "In deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W. Va. 3, 459 S.E.2d 114 (1995), but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test." Syllabus point 5, *State ex. rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

5.      "The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation." Syllabus point 3, *State ex. rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

6.      "In determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, this Court will not view counsel's conduct through the lens of hindsight.  Courts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion.  Rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices."  Syllabus point 4, *State ex. rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995).

7.      "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused."  Syllabus point 21, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974).

**Jenkins, Justice:**

Petitioner James R. Meadows ("Mr. Meadows") appeals the April 5, 2018

order of the Circuit Court of Monroe County, which denied his post-conviction petition for

writ of habeas corpus.[1]  In November of 2010, Mr. Meadows was convicted of second-

degree murder, death of a child by a guardian or custodian, and child abuse resulting in

injury.  Mr. Meadows then filed a direct appeal to this Court, and in *State v. Meadows*, 231

W. Va. 10, 743 S.E.2d 318 (2013), we affirmed his convictions.[2]  Mr. Meadows now raises

---

[1]  The original petition named the respondent as David Ballard, in his official capacity as Warden of the Mount Olive Correctional Complex. Then, when the appeal was filed, the respondent was changed to Ralph Terry, who was, at that time, the Acting Warden of the Mount Olive Correctional Complex.  During the course of these appellate proceedings, Mr. Meadows has been transferred, and is currently incarcerated at the McDowell County Corrections/Stevens Correctional Center.  Thus, R.S. Mutter, Deputy Superintendent of the McDowell County Corrections/Stevens Correctional Center, has been substituted as the respondent in this appeal pursuant to Rule 41 of the Rules of Appellate Procedure.

[2] On direct appeal, in addition to alleging multiple trial court errors, Mr. Meadows also alleged that his trial counsel was constitutionally ineffective.  This Court found, "that the ineffective assistance of counsel claim [was] not adequately developed for consideration on direct appeal.  This decision, however, [was] made without prejudice should Meadows desire to proceed with the development of a more complete record on the issue in a petition for habeas corpus." *State v. Meadows*, 231 W. Va. 10, 25, 743 S.E.2d 318, 333 (2013).

As stated in *State ex. rel. Daniel v. Legursky*, 195 W. Va. 314, 465 S.E.2d 416 (1995):

> Traditionally, ineffective assistance of counsel claims are not cognizable on direct appeal.  We have urged counsel repeatedly to think of the consequences of raising this issue on direct appeal.  Claims that an attorney was ineffective involve inquiries into motivation behind an attorney's trial strategies. *See State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995).

1

multiple assignments of error in his habeas corpus petition, which was denied by the circuit court after an omnibus evidentiary hearing. Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, this Court affirms the Circuit Court of Monroe County's denial of Mr. Meadows' habeas petition.

# I.

## FACTUAL AND PROCEDURAL HISTORY

The underlying facts of Mr. Meadows' convictions are fully set forth in *State v. Meadows*, 231 W. Va. 10, 743 S.E.2d 318 (2013). For purposes of this matter, a summarized version will be presented.

---

Without such facts trial counsel's alleged lapses or errors will be presumed tactical moves, flawed only in hindsight. What is more, in the event a defendant pursues his claim on direct appeal and it is rejected, our decision will be binding on the circuit court through the law of the case doctrine, "leaving [defendant] with the unenviable task of convincing the [circuit court] judge that he should disregard our previous ruling." *U.S. v. South*, 28 F.3d 619, 629 (7th Cir.1994). That is why in *Miller* we suggested that a defendant who presents an ineffective assistance claim on direct appeal has little to gain and everything to lose. In this case, we refuse to consider on this habeas appeal issues that we have already dealt with on direct appeal.

*Legursky* at 316 n. 1, 465 S.E.2d at 431 n. 1.

In November of 2010, seventeen-month-old I.H.[3] died as a result of repeated blows to her head and body. At trial, the case centered on whether Christen H., I.H.'s mother, or Mr. Meadows, Christen H.'s live-in boyfriend, inflicted the injuries that caused the child's death. At the time of the child's death, Mr. Meadows was living with Christen H. in a trailer with I.H. and Christen H.'s three-year-old son. On November 4, 2010, Christen H. and her son left the trailer to attend an appointment with the Department of Health and Human Resources ("DHHR"). Christen H. left I.H. with Mr. Meadows at their trailer, and gave her cell phone to Mr. Meadows "[j]ust in case anything would happen." Twenty minutes into her DHHR meeting, Christen H. received a call from Mr. Meadows informing her that I.H. was rushed to the hospital. A neighbor, Melissa Gill, testified at trial that she was awakened by Mr. Meadows who was carrying I.H. in his arms. Upon learning that Mr. Meadows had not called 911, Ms. Gill immediately placed the call.

> Ms. Gill followed the ambulance to the local hospital; Meadows remained at Christen's trailer. The toddler was in the emergency room of the local hospital for about three hours when the attending doctor concluded that her extensive injuries could not be managed at the facility. The toddler was transported by ambulance to the more specialized care and treatment available at a Charleston medical facility. During the transport, the child's condition became very unstable and remained that way for the duration of the trip despite paramedic intervention. The toddler died in Charleston on November 6, 2010.

---

[3] It is this Court's customary practice in cases involving sensitive facts to refer to parties by their initials rather than by their given names. *See In re Jeffrey R.L.*, 190 W. Va. 24, 26 n. 1, 435 S.E.2d 162, 164 n. 1 (1993).

*Meadows*, 231 W. Va. at 15, 743 S.E.2d at 323.  A few weeks later, Mr. Meadows was indicted "for one count of murder in the first degree, one count of a guardian or custodian causing the death of a child, and one count of child abuse resulting in bodily injury."[4] *Id.*

In September of 2011, following a three-day jury trial in Monroe County, Mr. Meadows was convicted of one count of second-degree murder, one count of death of a child by a guardian or custodian, and one count of child abuse resulting in bodily injury. As a result, he was sentenced to concurrent terms of incarceration of forty years for his conviction of second-degree murder, forty years for his conviction of death of a child by a guardian or custodian, and one to five years for his conviction of child abuse resulting in bodily injury.  Mr. Meadows then brought a direct appeal of his convictions and sentence

---

[4] According to this Court's opinion issued in the direct appeal,

[o]ther legal actions were also initiated.  According to a plea agreement filed in the circuit court on September 2, 2011, which was admitted into evidence at trial, Christen was charged in a two count indictment with permitting the death of a child by a parent, and child abuse resulting in injury.  The plea agreement reflects that Christen pled guilty to the lesser included offense of gross neglect of a child in exchange for her cooperation with the State's prosecution of the case.  The plea agreement included the stipulation that Christen "grossly neglected her child as defined by West Virginia Code § 61-8D-4(e) by permitting that child to be in the temporary care, custody, and control of R.L. Meadows."  Additionally, there are repeated references during the trial to a child abuse and neglect proceeding.  Documentation of anything regarding that proceeding is not part of the record in this appeal.

*Meadows*, 231 W. Va. at 25 n.5, 743 S.E.2d at 333 n.5.

4

to this Court. In his direct appeal, Mr. Meadows contended that the circuit court erred by: (1) granting a change in venue without a showing of good cause; (2) allowing testimony by a State's witness concerning polygraph test results without ordering a mistrial or providing a curative instruction; (3) allowing the introduction of hearsay evidence in the form of the testimony of a child psychologist about play therapy with I.H.'s brother without an adequate foundation; (4) deeming evidence of a child psychologist regarding the character of the accused to be admissible; and (5) permitting the introduction of gruesome photographs. Mr. Meadows argued that he was deprived of the right to a fair trial not only on these grounds but also because he had ineffective assistance of counsel at trial. After a careful review of the record and the arguments presented, this Court affirmed his conviction and sentences in May of 2013. *See State v. Meadows*, *supra.*

In October of 2013, Mr. Meadows filed a self-represented petition for writ of habeas corpus. After the circuit court appointed counsel, an amended petition was filed in May of 2014. On January 7, 2016, the circuit court held an omnibus evidentiary hearing, after which Mr. Meadows filed a supplemental memorandum in support of his petition. Ultimately, the circuit court denied Mr. Meadows' habeas corpus petition by order entered April 5, 2018. This appeal followed. Additional facts specifically related to the assignments of error raised by Mr. Meadows will be set out in our discussion of the particular issues to which they pertain.

## II.

## STANDARD OF REVIEW

Here, Mr. Meadows challenges the circuit court's order denying his habeas corpus petition. We review the circuit court's order under the following standard:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006). Moreover, "[o]n an appeal to this Court the appellant bears the burden of showing that there was error in the proceedings below resulting in the judgment of which he complains, all presumptions being in favor of the correctness of the proceedings and judgment in and of the trial court." Syl. pt. 2, *Perdue v. Coiner*, 156 W. Va. 467, 194 S.E.2d 657 (1973). With these standards in mind, we now address the arguments presented.

## III.

## DISCUSSION

In the case *sub judice*, Mr. Meadows has set out two assignments of error: (1) ineffective assistance of counsel and (2) cumulative error. We will review each assignment of error in turn.

## A. *Ineffective Assistance of Counsel*

Mr. Meadows' primary contention is that he is entitled to habeas corpus relief because his trial counsel provided him with ineffective assistance. This Court has consistently held that

> claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. pt. 5, *State v. Mill*er, 194 W. Va. 3, 459 S.E.2d 114 (1995). When examining counsel's performance under the *Strickland/Miller* two-prong standard, we have held as follows:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

Syl. pt. 6, *Miller*, 194 W. Va. 3, 459 S.E.2d 114. Put another way, "we always should presume strongly that counsel's performance was reasonable and adequate." *Id.* at 16, 459 S.E.2d at 127. The standard is demanding, and defendants have "a difficult burden because constitutionally acceptable performance is not defined narrowly and encompasses a 'wide range.' The test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done." *Id.*

This Court "is not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately." *Id.*

When a defendant makes a claim of ineffective assistance of counsel, to satisfy the first *Strickland/Miller* prong, he or she must identify the specific "act or omissions" of counsel believed to be "outside the broad range of professionally competent assistance." *Id.* at 17, 459 S.E.2d at 128. *See also State ex rel. Myers v. Painter*, 213 W. Va. 32, 35, 576 S.E.2d 277, 290 (2002) ("The first prong of [the *Strickland/Miller*] test requires that a petitioner identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.") (internal quotation marks omitted). The reviewing court is tasked with determining whether, "in light of all the circumstances," but without "engaging in hindsight," that conduct was so objectively unreasonable as to be constitutionally inadequate. *Miller*, 194 W. Va. at 17, 459 S.E.2d at 128. In particular, strategic choices and tactical decisions, with very limited exception, fall outside the scope of this inquiry and cannot form the basis of an ineffective assistance claim. *See State ex. rel. Daniel v. Legursky*, 195 W. Va. 314, 328, 465 S.E.2d 416, 430 (1995).

This Court further clarified that

> [i]n deciding ineffective of assistance claims, a court need not address both prongs of the conjunctive standard of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and *State v. Miller,* 194 W. Va. 3, 459

S.E.2d 114 (1995), but may dispose of such a claim based
solely on a petitioner's failure to meet either prong of the test.

Syl. pt. 5, *Legursky*, 195 W. Va. 314, 465 S.E.2d 416. As such, even if counsel's conduct

is deemed to have met the first *Strickland/Miller* prong, such conduct does not constitute

ineffective assistance of counsel unless it can also be demonstrated that the conduct was so

impactful that there is a "reasonable probability that, but for counsel's unprofessional

errors, the result of the proceedings would have been different." Syl. pt. 5, *Miller*. Finally,

"[f]ailure to meet the burden of proof imposed by either part of the *Strickland/Miller* test

is fatal to a habeas petitioner's claim." *State ex rel. Vernatter v. Warden*, *W. Va.

Penitentiary*, 207 W. Va. 11, 17, 528 S.E.2d 207, 213 (1999).

Thus, because Mr. Meadows challenges the effectiveness of trial counsel, it

is necessary for us to review Mr. Meadows' claims under the two-prong *Strickland/Miller*

standard. We now proceed to address each of the six bases in which error is alleged under

the claim of ineffective assistance of counsel.

1. **Inadequate investigation.** Mr. Meadows first contends that his trial

counsel (hereinafter referred to as "trial counsel" and "counsel") was ineffective for failing

to properly conduct an independent and adequate investigation into his case. During the

omnibus evidentiary hearing on his habeas petition, Mr. Meadows testified that his trial

counsel met with him only for limited periods of time before and after hearings and never

at the jail where he remained incarcerated. Further, he stated that counsel never spoke

9

with him over the phone or communicated with him by written correspondence. Due to this alleged lack of communication, Mr. Meadows claims that he was never given trial tips, was never counseled on the benefits and risks of testifying, and was never prepared for cross-examination.

The Respondent R.S. Mutter, Deputy Superintendent of the McDowell County Corrections/Stevens Correctional Center (hereinafter referred to as "the State") disagrees and emphasizes the record of the omnibus evidentiary hearing. Specifically, during the hearing, counsel testified that although he could not give an exact number of face-to-face meetings with Mr. Meadows, he estimated approximately twenty meetings, including telephone conversations and in-person discussions prior to and after hearings. Counsel also testified that, in addition to the phone calls and in-person discussions, he also represented Mr. Meadows in the corresponding abuse and neglect proceedings where he spoke with Mr. Meadows' family and friends "pretty close to a daily basis." Moreover, to supplement his communication with Mr. Meadows, counsel hired a private investigator to assist him in speaking to witnesses and in meeting with Mr. Meadows. Specifically, the visitation logs presented at the omnibus evidentiary hearing confirm that the private investigator met with Mr. Meadows at the jail on numerous occasions.

It has long been recognized in this State that

> [t]he fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls

10

within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation.

Syl. pt. 3, *Legursky*, 195 W. Va. 314, 465 S.E.2d 416. Further,

[i]n determining whether counsel's conduct falls within the broad range of professionally acceptable conduct, this Court will not view counsel's conduct through the lens of hindsight. Courts are to avoid the use of hindsight to elevate a possible mistake into a deficiency of constitutional proportion. Rather, under the rule of contemporary assessment, an attorney's actions must be examined according to what was known and reasonable at the time the attorney made his or her choices.

Syl. pt. 4, *id.*

In this case, we find no error in the circuit court's conclusion that the conduct of Mr. Meadows' trial counsel fell within the range of effective representation with regard to the investigation and preparation of his case. While Mr. Meadows offers conclusory assertions that his trial counsel was ineffective for failing to properly investigate his case and for failing to prepare him for trial, Mr. Meadows does not offer specific instances which would suggest that any such alleged failures constituted ineffective assistance of counsel. From our review of the record, we find trial counsel's testimony at the omnibus evidentiary hearing to be compelling.[5] Although Mr. Meadows

_____

[5] "[T]he primary purpose of an omnibus hearing is grounded in providing the Court with evidence from 'the most significant witness, the trial attorney,' in order to

11

attempts to paint a picture of neglectful counsel because of a lack of face-to-face meetings at the jail, we find nothing in the law that requires an attorney to conduct in-person jailhouse interviews. Rather, as evidenced by the omnibus hearing testimony, trial counsel was an experienced trial lawyer with twenty-five years of criminal law knowledge and extensive trial experience. Throughout the life of the litigation, counsel remained in contact with Mr. Meadows through face-to-face meetings, telephone conversations, and communication with the private investigator counsel hired.

With regard to preparedness, this Court finds Mr. Meadows' argument to be unpersuasive. Mr. Meadows claims that due to a lack of communication, his counsel failed to prepare him for trial. More specifically, Mr. Meadows claims that he had no discussions with his counsel about witnesses, trial strategy, or the State's evidence. Despite these contentions, trial counsel testified at the omnibus evidentiary hearing that

---

give that individual 'the opportunity to explain the motive and reason behind his or her trial behavior.' *State v. Miller*, 194 W. Va. 3, 15, 459 S.E.2d 114, 126 (1995)." *Tex S. v. Pszczolkowski*, 236 W. Va. 245, 253-54, 778 S.E.2d 694, 702-03 (2015). In other words,

> [t]he focus of any habeas evidentiary hearing as it relates to ineffective assistance of counsel is affording a petitioner's trial counsel an opportunity to explain his actions during the underlying trial. *See id.* [*State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995)] at 17, 459 S.E.2d at 128 (stating "we intelligently cannot determine the merits of ... ineffective assistance claim[s] without an adequate record giving trial counsel the courtesy of being able to explain his trial actions.").

*Tex S.* at 254, 778 S.E.2d at 703.

he did prepare Mr. Meadows to testify at trial. In fact, counsel testified that it was Mr. Meadows' high-quality testimony that convinced the jury to return a verdict of second-degree murder instead of a first-degree murder conviction with a sentence of life without mercy:

Q: Did you prepare him for his testimony?

A: Yes, sir.

Q: Did you speak to him about the likely subjects of cross-examination?

A: Oh, yes, sir, at length.

Q: When did you do that?

A: Throughout the whole course of these - starting back from the very first day or so that I talked to him leading up to right before he testified, we spoke in that room there that you're seated in today. And then he and his grandfather and I spoke - his grandfather and I spoke to him in the room at length because I was worried he would get on the witness stand and lose his temper. And he did not. He did a very good job.

. . . .

A: As I said earlier, I thought he was - he was very good. And perhaps in part the reason that he was only convicted of second-degree murder was because of his testimony. Frankly, he surprised me. He did a very good job. It's just - I've always found it to be a very difficult thing for defendants to testify. And like I say, I thought he did a very good job.

This Court has held that "[w]here a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no

13

reasonably qualified defense attorney would have so acted in the defense of an accused." Syl. pt. 21, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974). Based on the foregoing, the record is clear that counsel's communication with Mr. Meadows and his preparation of Mr. Meadows for testifying at trial were reasoned and strategic decisions made pursuant to trial counsel's extensive experience. Moreover, counsel's communications and preparation of Mr. Meadows ultimately resulted in a lesser sentence. As this Court stated in *State ex rel. Daniel v. Legursky*, 195 W. Va. at 329, 465 S.E.2d. at 430, "'[a] decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be "so ill chosen that it permeates the entire trial with obvious unfairness."' *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir. 1995), *quoting Garland v. Maggio,* 717 F.2d 199, 206 (5th Cir. 1983)." In light of these findings, we conclude that counsel's performance in terms of his investigation and preparation of Mr. Meadows' case were not deficient under an objective standard of reasonableness.

2.      **Evidence of actual innocence.** Next, Mr. Meadows argues that he received ineffective assistance because his trial counsel failed to offer "explosive testimony" at trial from witnesses who possessed evidence of his actual innocence. During the omnibus evidentiary hearing, Mr. Meadows presented the testimony of Gary Wheeler, the former Sheriff of Summers County and an investigator for the prosecution during the underlying criminal trial. According to Mr. Wheeler, he located and interviewed two individuals with what he believed was crucial information for the defense,

14

Stephanie Witham and Indie Riley.  Mr. Wheeler obtained a statement from Ms. Witham in which she claimed that Christen H., upon seeing the child's autopsy report, stated that she "didn't realize her [I.H.'s] arm was broke two days prior to her dying" and that she "just went too far" after the victim cried the night before her death, stating that she "just could not get [I.H.] to shut up."  During all of these interactions, Christen H. and Ms. Witham were housed in the same jail pod.

Ms. Witham was available to testify at trial, but during trial counsel's cross-examination, Christen H. denied knowing Ms. Witham.  Mr. Meadows contends that counsel then attempted to have Ms. Witham's statement admitted into evidence, but was precluded from doing so because counsel failed to lay an adequate foundation for impeachment, and Christen H. already had been released as a witness.

Mr. Meadows then assigns ineffective assistance to trial counsel's failure to have another witness, Indie Riley, testify at trial.  Ms. Riley testified at the omnibus evidentiary hearing that, during her time as Christen H.'s cellmate in jail and, later, her roommate after their release, she had concerns about Christen H.'s behavior.  According to Ms. Riley, Christen H. admitted that she "[couldn't] believe [she] did this," which Ms. Riley took to mean that "she killed the baby."  Although trial counsel claimed that he spoke with Ms. Riley prior to trial, Ms. Riley denied speaking with anyone from counsel's office.  Mr. Meadows further alleges that counsel never mentioned Ms. Riley to him.  According to Mr. Meadows, the testimony of Stephanie Witham and Indie Riley directly

15

contradicted the evidence against him and, more importantly, was "highly exculpatory and consistent" with defense's theory that Christen H. killed the child, not Mr. Meadows. He argues that trial counsel's failure to present the testimony of Stephanie Witham and Indie Riley was constitutionally deficient.

The State maintains that the decision in choosing to forego the testimony of these two witnesses was made for strategic purposes. Counsel knew of these statements; however, after speaking with Ms. Riley, he decided not to call her as a witness. During the omnibus hearing, trial counsel testified as follows:

> Q: And that was a witness named Indie Riley. She would have also been in the pod with [Christen H.] and then later had resided with [Christen H.]. Do you remember Miss Riley?
>
> A: I spoke to Miss Riley. I do remember the name Indie, yes.
>
> Q: And did you attempt to secure her appearance at trial?
>
> A: It depends on what you term as secure her appearance. I spoke to her before the trial. And she wasn't going to say what we had hoped that she would say. And so at that point, I did not - did not attempt to bring her to the trial.

Likewise, counsel made a strategic decision to forego presenting the testimony of Ms. Witham. The State emphasizes that Mr. Meadows "grossly mischaracterizes Ms. Witham's statements" as Christen H.'s admissions of guilt. Rather, when put in context, Christen H.'s comments to Ms. Witham pertained to the child's broken arm. Ms. Witham admits that Christen H. never explicitly admitted to killing the child. While counsel could have laid a foundation for Mr. Witham's testimony by

16

questioning Christen H., he made a thorough and strategic reason for not doing so.  During

the omnibus evidentiary hearing, trial counsel testified:

> A: When Cristen H. was on the stand, I remember she was a very sympathetic - in my mind, she was perhaps the best witness, I thought - one of the best witnesses, if not the best witness, for the [S]tate.  She, how should I say, evoked great sympathy, I felt like.  It was just crushing to our side, frankly.  And I didn't want her back on the stand.  I also knew -- there was some strategy involved in that.  I knew what she was going to say.  If she had the opportunity to read the statement, she was going to say that what she meant by the statement was she made a big mistake in giving - leaving the child with Mr. Meadows.  And I didn't want her really to clarify that, frankly.  And I didn't want her back on the stand.
>
> Q: And the only way that Witham would've been able to testify would've been if you had recalled Cristen H.; is that correct?
>
> A: I thought Ms. Witham did testify a little bit.
>
> Q: Well, she did a little bit.  But I think the Court did not allow her –
>
> A: There was maybe an objection to her testifying about the actual statement because [Christen H.] didn't read the statement?
>
> Q: Correct.
>
> A: Yes.

In conducting our review of this case, we must clarify that, in addressing the

issue of whether a reasonable attorney would have investigated the witnesses statements,

we are not concerned with the truth or falsity of the statement, or whether the statement

itself might have led to adverse consequences for Mr. Meadows at trial.  Rather, the sole

17

issue presented now is whether trial counsel acted as a reasonable criminal defense attorney in choosing to forego this testimony.

> Having presented substantial evidence, counsel [is] not required to develop every conceivable defense that was available. Nor [is] counsel required to offer a defense or instruction on every conceivable defense. What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess. Obviously, lawyers always can disagree as to what defense is worthy of pursuing "such is the stuff out of which trials are made." *Solomon v. Kemp*, 735 F.2d 395, 404 (11th Cir.1984), cert. denied, 469 U.S. 1181, 105 S.Ct. 940, 83 L.Ed.2d 952 (1985).

*State v. Miller*, 194 W. Va. 3, 16, 459 S.E.2d 114, 127 (1995). *Accord State ex rel. Adkins v. Dingus*, 232 W. Va. 677, 753 S.E.2d 634 (2013).

In the instant proceeding, trial counsel testified that he had strategic reasons for not presenting the statements of Ms. Witham and Ms. Riley. It was his belief that the statements lacked explicit admissions of guilt, and that presenting the ambiguous statements would do more harm than good to Mr. Meadows' defense if he tried to lay a foundation through Christen H., who was a very sympathetic witness for the prosecution. We agree.

At first glance, the statements of Ms. Witham and Ms. Riley appear to be exculpatory statements that are favorable to Mr. Meadows' defense. However, upon a closer examination, we find that Mr. Meadows has overstated the potential exculpatory

18

value of these statements. We find that under the circumstances presented to us regarding the performance of trial counsel, a reasonable lawyer could have certainly made the strategic decision not to present these witness statements at trial. As evidenced here, trial counsel had a strong belief that (1) the statements were not outright admissions; (2) the statements could be misconstrued; and (3) the potential probative value of the statements would have been destroyed during the laying of the foundation for their admissibility because Christen H. was a strong witness for the prosecution. As this Court has stated in the past, "[t]here is much wisdom for trial lawyers in the adage about leaving well enough alone." *Miller*, 194 W. Va. at 17, 459 S.E.2d at 128.

In its order denying Mr. Meadows' petition for habeas corpus relief, the circuit court stated that

> [r]ather than providing first-hand evidence of the guilt of [Christen H.], a review of the transcript of Investigator Wheeler's [prosecution's investigator] interview with Witham clearly show that no statement was made by [Christen H.] indicating that she had murdered the victim; rather, Witham's conclusion of [Christen H.'s] guilt in the matter was merely speculative, and failing to elicit the testimony was not unreasonable. Even assuming arguendo, that the failure to introduce the evidentiary testimony was a constitutionally deficient on the part of Petitioner's trial counsel, Petitioner fails to demonstrate that the admission of the speculative statement would have a reasonable probability of changing the outcome of the trial. Thus, Petitioner's second claim under a theory of ineffective assistance of counsel cannot fulfill the second prong of the *Strickland/Miller* test.

19

We agree with the circuit court's reasoning.  Accordingly, we find that trial counsel's performance in terms of his decision to forego presenting the witness statements of Ms. Witham and Ms. Riley was a strategic decision; it was not deficient under an objective standard of reasonableness, and therefore, Mr. Meadows fails to meet the first prong of *Strickland/Miller* on this point.

**3.      Eliciting evidence of polygraph testing.**   Mr. Meadows next contends that his trial counsel was constitutionally deficient for eliciting evidence of polygraph testing.  According to Mr. Meadows, in response to a line of questioning during his trial counsel's cross-examination of Christen H., she repeatedly referenced the fact that she had passed a polygraph test wherein she denied injuring the child.  He argues that this evidence was clearly inadmissible; no effort was made by his counsel to have the reference to the polygraph results withdrawn; and no request was ever made for a curative instruction to attempt to resolve the improper testimony.

In Mr. Meadows' direct appeal, this Court found that while error was committed when the polygraph testimony was introduced, "it was not reversible error because the evidence was not elicited from or about the defendant, and defense counsel rather than the State was responsible for its introduction."  *Meadows*, 231 W. Va. at 21, 743 S.E.2d at 329.  In other words, the admission of the polygraph evidence was invited error and, therefore, not reversible.  *Id.*  Now, in the current habeas appeal, Mr. Meadows avers that because the inadmissibility of polygraph evidence is "well-established" in this

20

State, by failing to object to this inadmissible testimony, counsel provided deficient representation under an objective standard of reasonableness.

The State rebuts Mr. Meadows' assertions with regard to the polygraph evidence, and refers to the decision of this Court in Mr. Meadows' direct appeal. *See generally Meadows*, 231 W. Va. 10, 743 S.E.2d 318. During his direct appeal, Mr. Meadows challenged the polygraph evidence arguing plain error in the trial court's denial of his motion for a mistrial and in its failure to offer a curative instruction. *Id.* at 20, 743 S.E.2d at 328. Despite finding that error did occur when the polygraph evidence was introduced, this Court concluded that no grounds for a mistrial existed because the polygraph references related to a witness, not the defendant, himself. *Id.* at 20-21, 743 S.E.2d at 328-329. This Court further articulated that "it was not reversible error because the evidence was not elicited from or about the defendant" and the defendant was able to challenge the witness' credibility through several defense witnesses. *Id.* As such, the State concludes that *even if* counsel's references were objectively unreasonable, Mr. Meadows fails to show prejudice under the second prong of the *Strickland/Miller* test.

With regard to this issue, we have no difficulty in finding that trial counsel's performance regarding the polygraph references was constitutionally deficient. Counsel should not have elicited testimony from the witness regarding her polygraph test—which is well-known to be inadmissible evidence. It is well-established that "[p]olygraph test results are not admissible in evidence in a criminal trial in this State." Syl. pt. 2, *State v.*

21

*Frazier,* 162 W.Va. 602, 252 S.E.2d 39 (1979). At trial, Mr. Meadows' attorney moved for a mistrial, but he did not request a curative instruction regarding the polygraph evidence. However, as this Court stated in Mr. Meadows' direct appeal, "this Court has not established a hard and fast rule that a curative instruction is always required regardless if objection is raised, or that such instruction would always serve to cure the erroneous introduction of polygraph evidence." *State v. Meadows*, 231 W. Va. 10, 21, 743 S.E.2d 318, 329 (2013). This Court concluded in the direct appeal that

> [i]n view of the fact that the polygraph references in the case before us related to a witness rather than the defendant himself, we find no manifest necessity requiring the discharge of a jury by grant of a mistrial. . . . Additionally, the record reflects that Meadows was not impeded from raising a challenge to Christen [H.]'s veracity through the testimony of several defense witnesses.

*Id.* Before us, Mr. Meadows cites no authority requiring trial counsel to ask for a curative instruction to avoid a claim of ineffective assistance of counsel.

To obtain relief, a petitioner has the burden of showing not only unreasonable representation, but also the existence of prejudice. *See, e.g.*, *Vernatter*, 207 W. Va. at 17, 528 S.E.2d at 213 ("Failure to meet the burden of proof imposed by either part of the *Strickland/Miller* test is fatal to a habeas petitioner's claim. *State ex rel. Daniel v. Legursky,* 195 W. Va. 314, 321, 465 S.E.2d 416, 423 (1995).").

> In order to obtain relief under *Strickland/Miller,* it is not sufficient that a petitioner only point to his or her attorney's deficient performance. In addition, he or she must demonstrate that the complained of deficiency resulted in prejudice or, as

22

discussed above, a "reasonable probability" that in the absence of error the result of the proceedings would have been different, *Strickland, supra,* and was fundamentally unfair or unreliable. *Lockhart* [*v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

*Legursky*, 195 W. Va. at 325, 465 S.E.2d at 427.

Under the facts presented in the case *sub judice*, we agree with the State that Mr. Meadows has failed to demonstrate prejudice under the second prong of *Strickland/Miller*. Mr. Meadows "strives to persuade us that we should do what is rarely done—find that his rights under Section 14 of Article III of the West Virginia Constitution were denied in that he was a victim of his counsel's ineffective assistance at the trial level." *Legursky*, 195 W. Va. at 319, 465 S.E.2d at 421. However, "[u]nless claims of ineffective assistance of counsel have substantial merit, this Court, historically, has taken a negative view toward the assertion of frivolous claims." *Id.*

Moreover, as we noted above, trial counsel did not ask for a curative instruction regarding the improper polygraph testimony, and Mr. Meadows does not cite any authority requiring trial counsel to request such an instruction. Even if we assume that trial counsel should have asked for a curative instruction, Mr. Meadows fails to demonstrate that such an instruction would have had a reasonable probability to change the outcome of the proceedings as required by the second prong of the *Strickland/Miller* test. To be clear, inviting this error fell outside the scope of *Strickland/Miller*'s delineated range

23

of effective assistance. However, a finding of unreasonable representation does not end an inquiry into ineffective assistance of counsel. Pertaining to the second prong of the *Strickland/Miller* test, Mr. Meadows offers only one sentence in his appellate brief to demonstrate prejudice: "Counsel's performance in addressing the initial mention of the polygraph and then allowing her to reference it again on two more occasions was clearly ineffective and prejudicial for all the reasons stated above." Aside from this one sentence, Mr. Meadows does not address or analyze, in any detail, why there exists a reasonable probability that, but for counsel's ineffective assistance, the result of his trial would have been different. "The burden of persuasion placed on the petitioner is indeed a heavy one and, under our jurisprudence, we are prevented from reversing convictions on this ground unless two components are satisfied." *Legursky*, 195 W. Va. at 319, 465 S.E.2d at 421.

Here, Mr. Meadows generally concludes that he was prejudiced by the polygraph evidence, and that his counsel should have asked for a curative instruction. However, he does not provide any support for the notion that there was a reasonable probability that the verdict would have been any different with a curative instruction. From our own review of the law, as well as the evidence presented to the jury upon which the jury based it guilty verdict, we do not find that a curative instruction would have altered the outcome of the trial. *See State ex rel. Wimmer v. Trent*, 199 W. Va. 644, 649, 487 S.E.2d 302, 307 (1997) ("Under the circumstances the court believes that even if the instruction had been given, it is not reasonably probable that the jury would have found differently given the overall evidence in the case.").

24

Moreover, the polygraph references were not related to Mr. Meadows, himself, and he was able to attack the polygraph witness' credibility through other witnesses who testified on his behalf. We therefore conclude that, with respect to the second prong of *Strickland/Miller*, Mr. Meadows has failed to establish that but for his counsel's failure to obtain a curative instruction for the polygraph evidence, there was a reasonable probability of a different outcome.

**4.    Display of victim's photographs.** The next challenge raised by Mr. Meadows relates to photographs of the child that were displayed during Mr. Meadows' cross-examination. Although he acknowledges that counsel objected to the admissibility of the photos, themselves, he maintains that counsel was ineffective for failing to object to the photographs being continually displayed during his testimony. Mr. Meadows argues that the photographs were inflammatory and had a "tremendous effect" on his ability to testify.

The State contends that Mr. Meadows fails to illustrate how his trial counsel was ineffective with regard to the photographs. First, the State argues that the trial transcript lacks any indication that the photos in question distracted petitioner or otherwise hindered Mr. Meadows' ability to effectively testify, as he alleges. In fact, as addressed above, counsel believed petitioner's testimony was "very good" and perhaps the reason he was convicted only of second-degree murder rather than life without mercy. Similarly, the State avers that the record is devoid of any evidence that the jury was distracted by the

photos or was unable to consider Mr. Meadows' testimony because of their display. Lastly, the State reiterates that Mr. Meadows' trial counsel did object to the photographs, themselves, and any decision not to offer further objections to their display was likely a strategic decision.

We agree with the State that trial counsel was not deficient for failing to offer continued objections to the photographs. Here, Mr. Meadows fails to put forth any evidence to show that counsel's decision was anything other than a strategic decision to avoid drawing additional attention to the photos by repeatedly objecting. At the omnibus evidentiary hearing, counsel specifically testified that he objected to the photos previously and that repeated objections can "become . . . overkill" and that repeatedly being overruled is "not a good tactic at trial." While there is certainly a distinction between objecting to the use of the photographs and objecting to the photographs' continuous display, trial counsel was in the best position to determine how to minimize the photos' impact on the jury. Further, it is unclear if an objection to their display would have been sustained, given the trial court's ruling on the photos' admissibility generally. At trial, the court weighed the probative value of the photographs against their prejudicial value, and ruled that

> the State's theory of the case, at least, is that the child was in reasonably good health early that morning when the mother left home and that the child suffered life-ending injuries while she was in the custody of the defendant. And the Court feels that there's - if I understand correctly, there's pictures of the child before the day in question, in which the child appeared to be fairly normal. Then, there's pictures after the child was taken to the hospital that showed extensive injuries.

26

> And the Court feels that there would be a great deal of probative value here because of that, because they would show that the child was initially uninjured, and then later was injured. So, there's a great deal of probative value.

The State used the photographs to rebut Mr. Meadows' testimony as to who inflicted the child's injuries, where they were inflicted on the child's body, and what they looked like when he came into contact with the child.

Therefore, the habeas court found Mr. Meadows' argument regarding the photographs to be meritless because of the relevancy of the photos and the limited scope of their use by the State in rebutting Mr. Meadows' trial testimony. We agree. Additionally, this issue already was litigated during Mr. Meadows' direct appeal. When determining that no error resulted from their admission and subsequent display, this Court found that

> [w]hile the photographs depicting the toddler from the time closest to the infliction of the fatal blows through autopsy are unquestionably disturbing, they were admissible as evidence relevant to material elements of the prosecution's burden of proof and the probative value clearly outweighed any prejudicial impact. The autopsy photos were used to explain the force of the blows causing the child's ultimate death by showing how deeply the brain tissue itself had been damaged, negating that the child's injuries were the result of an accident or fall. The autopsy pictures of the child's lip and chin were used to dispel any misconception that the injuries were caused by anything other than forceful blows to the child's head. The photographs taken prior to death document the number and location of bruises on the child's entire body, and provided the fact-finder with information as to the extent of the blows which had more recently been inflicted on the child. Accordingly, we

27

find no error in the trial court's admission of the photographs. *Meadows*, 231 W. Va. at 23-24, 743 S.E.2d at 331-32. Insofar as this Court found no error on direct appeal with regard to the admission of these photographs, we extend that conclusion, for similar reasons and trial strategy, to the additional allegation raised here regarding the continued display of the photographs. Mr. Meadows' counsel cannot logically be deemed ineffective for failing to offer continued objections to the photographs in question. Because the trial court, the habeas court, and this Court have all found that there was no error in admitting these photographs at trial, it would be difficult to conclude that trial counsel was ineffective for failing to object to their continued display. Thus, we do not find counsel's failure to offer continued objections constituted deficient performance.

**5. Decision to change venue.** Mr. Meadows next argues that his trial counsel's performance was deficient because counsel failed to consult with Mr. Meadows concerning a change of venue from Summers County to Monroe County. Additionally, Mr. Meadows contends that his trial counsel had a duty to keep him reasonably informed about the status of his case and to explain the matter so that he could make informed decisions. *See* W. Va. R. Prof. Cond. 1.4. He further avers that, on appeal, he was unable to challenge the change of venue because "there was nothing in the record which documents when the decision to change venue was made, how the parties were notified of the change or any other circumstances surrounding the transfer." *Meadows*, 231 W. Va. at 15, 743 S.E.2d at 323. Because counsel made no objection at trial, and because there

28

was an inadequate record as to the decision, no appellate review was possible. As such, Mr. Meadows maintains that counsel's ineffective representation precluded him from exercising his constitutional right to appellate review.

The State refutes Mr. Meadows' argument and states that his claim of ignorance regarding the change of venue is disingenuous. In furtherance of its argument, the State notes that the record reflects that it was Mr. Meadows' trial counsel who initially made the motion for a change of venue at a hearing where Mr. Meadows was, in fact, present. The record further shows that Mr. Meadows and his family were the driving force behind the motion for the change of venue. During the omnibus evidentiary hearing, trial counsel provided the following testimony:

> A: We did make a motion. In fact, we hired an organization from Charleston to do a survey to support our motion to change the venue. The family - Mr. Meadows and his family felt very strongly that he couldn't get a fair trial in Summers County, that it needed to be somewhere else because of all the pretrial publicity and because of the nature of the case.
>
> Q: So I think early on, you made that motion?
>
> A: I think so, yes, ma'am, near the beginning.
>
> Q: And at that time, did the judge grant the motion?
>
> A: I don't remember the exact mechanics of that. I thought the judge maybe took it under advisement. I just don't remember the exact mechanics of how all of that happened. At some point, he agreed, I guess. I don't know if he agreed or just - if he agreed it should be moved because of the possible pretrial prejudicial stuff that had happened or if he just felt like it was more comfortable to do the trial in Monroe County. I don't remember the exact mechanics and timing of all of that. But in

any event, I know that it was moved to Monroe County at some point.

Q: When you found out that it was going to be moved to Monroe County, did you feel that that in any way would prejudice your client?

A: No. I mean, that was - like say, that was what we wanted actually. I think we filed the motion to have it moved.

The trial court changed the venue in an attempt to provide a fair trial to Mr. Meadows, explaining that there was less publicity in Monroe County, and they were more likely to find jurors who did not know details of the case. As with multiple other assignments of error in this case, the transfer of venue was challenged by Mr. Meadows in his direct appeal, and it was addressed on its merits by this Court. In that opinion, this Court found that

> Meadows has not indicated what prejudice he suffered as a result of the transfer and the record does not reflect that Meadows had any difficulty in obtaining evidence or securing witnesses due to the change in trial location. These facts fall far short of demonstrating that the trial court acted unilaterally or arbitrarily by moving the location of the trial or that Meadows did not receive a fair trial as guaranteed by our State Constitution. As such, the facts before us do not trigger the application of the plain error doctrine.

*Meadows*, 231 W. Va. at 20, 743 S.E.2d at 328. We agree. As stated earlier, because the trial court, the habeas court, and this Court have all found that there was no error in changing venue, it would be difficult to conclude that trial counsel was ineffective in this regard. Moreover, Mr. Meadows fails to show that he received an unfair trial in Summers County. Therefore, we find that Mr. Meadows has failed to satisfy his obligation under the

30

first prong of *Strickland/Miller,* which requires him to show that his counsel's performance with regard to venue was deficient under an objective standard of reasonableness. Because we conclude that Mr. Meadows has failed to meet his obligation under the first prong of *Strickland/Miller,* we need not address the second prong.

**6.    Addressing play therapy.**  Mr. Meadows' last ineffective assistance of counsel contention involves the admissibility of play therapist Steve Ferris' testimony at trial. Mr. Meadows argues that, during trial, Steve Ferris was allowed to testify about observations he made from engaging with the victim's brother during play therapy sessions conducted to allow the child to deal with his sister's death. On direct appeal, appellate counsel attempted to assert that this testimony represented conclusions based on mere speculation and conjecture, as there were no real statements made by the brother, and that the testimony consisted solely of Mr. Ferris' interpretations of the brother's actions. *Meadows*, 231 W. Va. at 21, 743 S.E.2d at 329. This Court, however, found that trial counsel's objections to Steve Ferris' testimony on appeal were based on different grounds, and not based on hearsay as were his trial objections to such testimony. Therefore, even though such considerations were articulable under the test identified by this Court, appellate review was precluded due to counsel's failure to raise these specific objections before the trial court. *See, e.g., State v. DeGraw*, 196 W. Va. 261, 272, 470 S.E.2d 215, 226 (1996) ("It is well established that where the objection to the admission of testimony is based upon some specified ground, the objection is then limited to that precise ground and error cannot be predicated upon the overruling of the objection, and the admission of

31

the testimony on some other ground, since specifying a certain ground of objection is considered a waiver of other grounds not specified.").

The State disagrees with Mr. Meadows' characterization of trial counsel's actions with regard to the play therapy evidence. First, the State represents that trial counsel did object to Mr. Ferris' testimony. In fact, counsel termed the testimony objectionable "on every level" and "completely improper," and he objected to it as being beyond any hearsay exception permitted under Rule 803(4) of the West Virginia Rules of Evidence,[6] and as a violation of the confrontation clause. However, as this Court pointed out on direct appeal, counsel did not raise specific objections, and

> [t]rial counsel did not argue that the testimony was not based on statements the brother made to the psychologist, that the brother's statements were inconsistent with the purpose of providing treatment, or that the statements were not relied upon by the psychologist for the purposes of treatment or diagnosis. *See* Syl. Pt. 4, *State v. Payne*, 225 W.Va. 602, 694 S.E.2d 935 (2010) (quoting Syl. Pt. 5, *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990)) (providing test for determining admissibility of evidence pursuant to Rule 803(4)).

*Meadows*, 231 W. Va. at 21, 743 S.E.2d at 329. The State contends that, now, Mr. Meadows gives only cursory treatment to the issue by concluding, without any support,

---

[6] Rule 804(4) of the West Virginia Rules of Evidence states: "The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: A statement that: (A) is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."

that Mr. Ferris' use of certain phrases transformed his testimony into something unacceptable under Rule 803(4). Because this contention is mentioned only in passing, the State argues that it should not be addressed by this Court in the present appeal.

We find that Mr. Meadows' claim of ineffective assistance of counsel concerning trial counsel's failure to object to the play therapist's testimony fails under the first prong of *Strickland/Miller*. Not only did Mr. Meadows' trial counsel make multiple objections to this testimony at trial, but this Court also found—on direct appeal—that the play therapy testimony was appropriately found to be admissible for many legitimate purposes. *See Meadows*, 231 W. Va. at 22, 743 S.E.2d at 330.

Here, Mr. Meadows fails to show how his trial counsel was deficient. From the record, it appears that counsel appropriately objected to the testimony and provided effective representation to Mr. Meadows. As explained in *State v. Miller*,

> [t]he test of ineffectiveness has little or nothing to do with what the *best* lawyers would have done. Nor is the test even what most good lawyers would have done. We only ask whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at the time, in fact, worked adequately.

194 W.Va. at 16, 459 S.E.2d at 127.

33

Further, assuming *arguendo* that the first prong of *Strickland/Miller* was satisfied, we find no evidence to support the second prong. In this assignment of error, Mr. Meadows provided only a skeletal argument that fails to show any prejudice from the lack of specific objections set forth above. Because he cannot show that a specific objection would have rendered the testimony inadmissible, or changed the outcome of his trial, he is not entitled to habeas relief on this ground.

### B. Cumulative Error

Lastly, Mr. Meadows alleges that the circuit court erred in failing to grant relief based upon cumulative error. In support of this argument, he merely quotes Syllabus point 5 of *State v. Smith*, 156 W. Va. 385, 193 S.E.2d 550 (1972), and states that there were multiple errors cited that warrant relief. Syllabus point 5 of *Smith* holds that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error." *Id.*

The State responds and characterizes Mr. Meadows' argument as "skeletal, consisting of a single statement of law and no legal analysis whatsoever, thereby implicating this Court's 'truffle doctrine.'" *See State, Dep't of Health & Human Res., Child Advocate Office v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S. E.2d 827, 833

(1995) ("Judges are not like pigs, hunting for truffles buried in briefs.") (citations and quotations omitted).  As such, the State contends that the argument on this issue is not reviewable.

This Court previously has held that "[w]here the record of a criminal trial shows that the cumulative effect of numerous errors committed during the trial prevented the defendant from receiving a fair trial, his conviction should be set aside, even though any one of such errors standing alone would be harmless error."  Syl. pt. 7, *State v. Tyler G.*, 236 W. Va. 152, 778 S.E.2d 601 (2015) (citation omitted).  It was further noted that this doctrine is "applicable only when 'numerous' errors have been found." *Id.* at 165, 778 S.E.2d at 614 (citation omitted).  "Two errors do not constitute 'numerous' for purposes of the cumulative error doctrine." *Id.*  Even where the errors are numerous, if they are "insignificant or inconsequential, the case should not be reversed under the doctrine." *Id.* (citation omitted).

We need not engage in an extended analysis of Mr. Meadows' cumulative error argument.  Though raised as an assignment of error, Mr. Meadows fails to argue or adequately brief the issue.  "In the absence of supporting authority, we decline further to review this alleged error because it has not been adequately briefed." *State v. Allen,* 208 W. Va. 144, 162, 539 S.E.2d 87, 105 (1999). *See also State v. LaRock*, 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996) ("Although we liberally construe briefs in determining

35

issues presented for review, issues which are not raised, and those mentioned only in passing but [which] are not supported with pertinent authority, are not considered on appeal."); *Robert Morris N.*, 195 W. Va. at 765, 466 S.E.2d at 833 (1995) ("[A] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" (internal quotations and citations omitted)); Syl. pt. 6, *Addair v. Bryant*, 168 W. Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the brief on appeal may be deemed by this Court to be waived."). Moreover, we have found no errors in the trial court's proceedings that would warrant application of this doctrine to the facts of this case.

## IV.

## CONCLUSION

For the reasons set forth above, we affirm the denial of habeas corpus relief. Accordingly, the April 5, 2018 order of the Circuit Court of Monroe County denying Mr. Meadows' petition for writ of habeas corpus is affirmed.

Affirmed.